United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCESS OPTICAL NETWORKS, INC., <br> Plaintiff, <br> v. <br> SEAGATE TECHNOLOGY LLC, <br> Defendant. | Case No. 24-cv-03745-EKL <br><br> **ORDER GRANTING MOTION TO DISMISS IN PART** <br><br> Re: Dkt. No. 26 |

Plaintiff Access Optical Networks, Inc. ("AON") alleges that Defendant Seagate Technology LLC ("Seagate") misappropriated its trade secrets and breached the parties' non-disclosure agreements.  Seagate moves to dismiss for failure to state a claim.  Mot. to Dismiss, ECF No. 26 ("Motion").  The Court carefully reviewed the briefs and heard argument on January 15, 2025.  For the following reasons, the Motion is GRANTED IN PART with leave to amend and DENIED IN PART.

## I.    BACKGROUND[1]

"AON is a data storage company that develops optical data storage products and network access equipment."  First Am. Compl. ¶ 11, ECF No. 22 ("Compl.").  AON has "dedicated over two decades, thousands of employee hours and millions of dollars in research and development to overcome the limitations of traditional data storage technology."  *Id.* ¶ 1.  AON has innovated in the field of Holographic Data Storage ("HDS"), "a revolutionary technology that uses precisely controlled laser beams to store high volumes of digital data in three-dimensional photo-refractive crystals."  *Id.*

---

[1] The facts are taken from the complaint and assumed to be true for purposes of this Motion.

Seagate is a technology company that has focused on developing "an alternative next-generation storage system based on Heat-Assisted Magnetic Recording ('HAMR') principles." *Id*. ¶ 2.  HAMR "uses a combination of magnetic field and light to record information at a high density in a recording medium."  *Id*.  Both HDS and HAMR technology "require sophisticated optical engineering capabilities in order to succeed." *Id*. ¶ 3.

AON and Seagate's relationship began in 2012.  *Id*. ¶ 38.  At the time, Seagate "led AON to believe that it was interested in a potential collaboration or investment."  *Id*. ¶ 4.  To facilitate the partnership, the parties entered into a Master Non-Disclosure Agreement ("Master NDA") and two Supplemental Non-Disclosure Agreements ("Supplemental NDAs").  The Master NDA provides general terms that apply to any disclosure of confidential information, and the Supplemental NDAs define the scope of specific confidential information that the parties agreed to exchange.  Only the first Supplemental NDA is directly relevant here.

The Master NDA provides that the parties may use each other's confidential information solely "for the benefit of a potential business relationship between Seagate and [AON]."  Compl. Ex. D ¶ 5, ECF No. 22-4 ("Master NDA").  The Master NDA provides different marking requirements to indicate whether written and oral or visual disclosures are deemed "confidential."  It provides:

> **Markings:**  All Confidential Information that is subject to the terms and conditions of this Agreement will be clearly marked in writing by the Discloser as "CONFIDENTIAL," "SECRET" or with a comparable legend that would be reasonably interpreted to be confidential under the circumstances.  No party shall have any responsibility under this Agreement for any written information that is not so marked at the time of disclosure.  Neither party has any responsibility under this Agreement for any oral or visual disclosures, except as to information (i) designated as confidential at the time of oral or visual disclosure and confirmed in a writing delivered within twenty (20) days to Recipient that provides clear notice of the claim of confidentiality and describes the specific information disclosed, or (ii) that would be reasonably interpreted to be confidential under the circumstances.

*Id*. ¶ 6.

On July 23, 2012, the parties executed the First Supplemental NDA, which covered confidential information disclosed between July 23, 2012, and July 22, 2014.  Compl. Ex. E ¶ 1, ECF No. 22-5 ("First Supplemental NDA").  The First Supplemental NDA covered the following

United States District Court
Northern District of California

AON confidential information: "Business and technical information related to Energy Assisted Magnetic Recording, recording heads, sliders, and optical methods & components, including but not limited to: business & marketing plans, designs, lasers, specifications, processes, manufacturing plans, manufacturing tooling, product plans, research, test tools, test data, test processes, and materials." *Id*. ¶ 2. Confidential information disclosed pursuant to the First Supplemental NDA was subject to a confidentiality period of five years from the date of disclosure. *Id*. ¶ 3.2.

AON alleges that, between 2012 and 2015, at "Seagate's insistence and encouragement, AON provided extensive proprietary and confidential demonstrations as well as detailed explanations of HDS and its photonic and optical systems to Seagate." Compl. ¶ 5. According to AON, Seagate was having difficulty mastering optical technology required to develop Seagate's HAMR data storage device. "AON, using the experience and expertise it had acquired from years of optical data storage research and development, provided Seagate with valuable confidential and trade secret information that addressed these optical challenges and problems Seagate was experiencing." *Id*. "AON also shared with Seagate confidential and trade secret information regarding how optical properties of the light on the recording medium have an impact on both the reliability and speed of the read/write process." *Id*. ¶ 27.

Despite the parties' early collaboration, "Seagate abruptly and unexpectedly stopped communicating with AON and no business agreement was reached." *Id*. ¶ 6. Then, in 2018, AON learned that Seagate had "released a limited amount of HAMR drives direct to enterprise customers for them to pilot." *Id*. ¶ 53. "Based on AON's years of experience working with these technologies, as well as what it witnessed during visits to Seagate's facilities, AON suspected that Seagate could not have accelerated the development of its HAMR drives over the 2016-2018 time period without in fact misusing the confidential and trade secret information that AON had shared with Seagate between 2012-2015." *Id*.

AON "engaged outside counsel to write to Seagate in 2018, to have Seagate confirm that it was not using any AON confidential or trade secret information." *Id*. ¶ 54. On December 5, 2018, AON's counsel wrote: "Based on [AON's] review of public information concerning Seagate's

HAMR product, we have concerns that Seagate's HAMR product may use AON trade secret information."  Compl. Ex. A, ECF No. 22-1.  On January 9, 2019, Seagate's counsel responded: "Seagate is not aware of any use of [AON's] information by Seagate for products, development or any other purpose."  Compl. Ex. B, ECF No. 22-2.  On January 25, 2019, AON's counsel sent Seagate another letter elaborating on the confidential information AON had shared with Seagate and again requested a response from Seagate.  Compl. Ex. C, ECF No. 22-3.  Seagate "seemingly ignored" this letter.  Compl. ¶ 7.  AON also "made diligent efforts to obtain a copy of Seagate's HAMR drive . . . but it was unable to do so as the drives were released direct to a limited number of targeted enterprise customers only and not to the general public."  Compl. ¶ 54.

In May, June, and October 2021, certain Seagate patents and patent applications were published, and "AON's fears that Seagate had misused and misappropriated AON's confidential and trade secret information intensified."  *Id.* ¶¶ 55, 57-58, 61.  According to AON, two of Seagate's patent applications "reveal that Seagate is using at least two AON trade secrets that were shared with Seagate in confidence."  *Id.* ¶ 57.  AON alleges that "the work described in these published patent applications must have been undertaken many years earlier."  *Id.* ¶ 58. Specifically, one of the applications "claims priority back to Seagate's disclosures in an application filed on February 21, 2018 (which did not become public until October 21, 2021), reflecting work that was undertaken even while Seagate was under" confidentiality obligations pursuant to the parties' non-disclosure agreements.  *Id.*

In April 2024, "AON learned for the first time that Seagate has in fact commercialized technology that it learned in confidence from AON."  *Id.* ¶ 66.  A press release "confirmed that Seagate had now progressed beyond the pilot drives that [it] had released in 2018 (to which AON had never been able to gain access) and beyond the disclosures in the patent application[s]."  *Id.* ¶ 67.

On May 17, 2024, AON initiated this action in the California Superior Court for the County of Santa Clara.  ECF No. 1-1.  On August 2, 2024, after the case was removed to federal court, AON amended the complaint.  AON alleges three causes of action:  (1) misappropriation of trade secrets under the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*);

(2) misappropriation of trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq*.); and (3) breach of contract under California law.  Seagate moves to dismiss the complaint in its entirety for failure to state a claim.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(b)(6) motion, the Court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III.    DISCUSSION

Seagate moves to dismiss all of AON's claims as time-barred.  Additionally, Seagate separately moves to dismiss the trade secret misappropriation and breach of contract claims for various pleading deficiencies.  The Court addresses these arguments in turn.

### A.    AON's Claims Are Not Time Barred.

Seagate argues that all of AON's claims are time-barred by the applicable statutes of limitations.  "If the expiration of the applicable statute of limitations is apparent from the face of

United States District Court
Northern District of California

5

1    the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to

2    dismiss." *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1035 (N.D.

3    Cal. 2009). "A motion to dismiss based on the running of the statute of limitations may be granted

4    only if the assertions in the complaint, read with the required liberality, would not permit the

5    plaintiff to prove that the statute was tolled." *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326,

6    1331 (9th Cir. 1996) (per curiam).

7        AON's trade secret claims are subject to a three-year limitations period. 18 U.S.C.

8    § 1836(d) (providing three-year period for claims brought under the Defend Trade Secrets Act);

9    Cal. Civ. Code § 3426.6 (providing the same for claims brought under the California Uniform

10   Trade Secrets Act). AON's breach of contract claim is subject to a four-year limitations period.

11   Cal. Civ. Proc. Code § 337(a). These periods were suspended for 180 days, from April 6, 2020,

12   until October 1, 2020, due to the COVID-19 pandemic. Cal. R. Ct. App. I Emergency Rule 9.

13   AON filed the original complaint in this action on May 17, 2024. ECF No. 1-1. Accordingly,

14   AON's trade secret misappropriation claims are time-barred if they accrued before November 18,

15   2020, and the breach of contract claim is time-barred if it accrued before November 19, 2019.

16       Here, AON invokes the delayed discovery rule to render its claims timely. "Under the

17   delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when

18   the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads

19   and proves that a reasonable investigation at that time would not have revealed a factual basis for

20   that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005).

21   In *Fox*, the Supreme Court of California explained:

22       Simply put, in order to employ the discovery rule to delay accrual of a cause of action,
         a potential plaintiff who suspects that an injury has been wrongfully caused must
23       conduct a reasonable investigation of all potential causes of that injury. If such an
         investigation would have disclosed a factual basis for a cause of action, the statute of
24       limitations begins to run on that cause of action when the investigation would have
         brought such information to light. In order to adequately allege facts supporting a
25       theory of delayed discovery, the plaintiff must plead that, despite diligent
         investigation of the circumstances of the injury, he or she could not have reasonably
26       discovered facts supporting the cause of action within the applicable statute of
         limitations period.
27

28

United States District Court
Northern District of California

1   *Id.* at 808-09.  *See also Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) (in bank) ("A

2   plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered

3   through investigation of sources open to her.").

4          As the party invoking the delayed discovery rule, it is AON's burden to "specifically plead

5   facts to show (1) the time and manner of discovery and (2) the inability to have made earlier

6   discovery despite reasonable diligence."  *Id.* at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*,

7   74 Cal. App. 4th 151, 160 (1999)); *see also Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218

8   (N.D. Cal. 2014).

9          AON plausibly alleges that its claims are timely because they accrued in 2021, when

10  Seagate's patents and patent applications were published.  Compl. ¶ 61.  AON alleges that the

11  Seagate patent applications for the first time disclosed HAMR features that "bear a striking

12  resemblance to two AON trade secrets shared with Seagate under the NDA in 2013" and that the

13  patent applications "reveal[ed]" to AON that Seagate allegedly misappropriated its trade secrets.

14  *Id.* ¶¶ 57, 61.  Accordingly, AON has alleged facts to show the time and manner of its discovery of

15  Seagate's alleged wrongful conduct.

16         Seagate argues that AON's claims accrued in December 2018, when AON's counsel sent a

17  letter to AON expressing "concerns that Seagate's HAMR product may use AON trade secret

18  information."  Compl. Ex. A.  But AON plausibly alleges that it conducted a "reasonable

19  investigation at that time," and that despite its efforts, AON "could not discover a factual basis"

20  for its claims.  *Fox*, 35 Cal. 4th at 803.  Specifically, AON sought assurances directly from

21  Seagate, and Seagate expressly denied any wrongdoing and then stopped communicating with

22  AON.  Compl. Exs. A-C.  *See Weatherly v. Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913,

23  919 (2004) ("[A] defendant cannot hinder the plaintiff's discovery through misrepresentations and

24  then fault the plaintiff for failing to investigate.").  AON also sought to inspect a copy of Seagate's

25  HAMR device but could not find one because they were "released direct to a limited number of

26  targeted enterprise customers only and not to the general public."  Compl. ¶ 54.  Because AON

27  conducted a reasonable investigation in 2018 and could not discover a factual basis for its claims,

28  the delayed discovery rule applies and AON's claims did not accrue until 2021.

United States District Court
Northern District of California

AON's allegations distinguish this action from the cases that Seagate cites.  In *GeoVector Corp. v. Samsung Electronics Co.*, the plaintiff was on inquiry notice of misappropriation once the defendant "began publicly selling products containing [plaintiff's] innovations."  234 F. Supp. 3d 1009, 1015 (N.D. Cal. 2017).  And in *Forcier v. Microsoft Corp.*, the plaintiff "had actual notice of an alleged act of misappropriation" because he had tested the accused software and "he was 'convinced' misappropriation had occurred."  123 F. Supp. 2d 520, 530-31 (N.D. Cal. 2000).  But here, AON alleges that Seagate's HAMR device was not publicly available in 2018 and AON could not obtain a copy, much less inspect one.  Compl. ¶ 54.  In *MedioStream, Inc. v. Microsoft Corp.*, the plaintiff "was aware of the factual basis for its claims" because it sued a different defendant four years earlier "for the misappropriation of trade secrets largely encompassing the [same] material."  869 F. Supp. 2d 1095, 1109 (N.D. Cal. 2012).  Finally, in *Gabriel Technologies Corp. v. Qualcomm Inc.*, the plaintiff's trade secret claims were time-barred because one of the plaintiff's employees acknowledged years earlier that a rival's product was "a direct rip-off" of the plaintiff's trade secret, but the employee "did nothing to investigate his suspicion."  857 F. Supp. 2d 997, 1004 (S.D. Cal. 2012).  By contrast, AON specifically alleges that it conducted a reasonable investigation once it developed initial concerns of potential misappropriation.[2]

Accordingly, Seagate's motion to dismiss AON's claims as time-barred is DENIED. Seagate may revisit this defense at summary judgment or trial on a more complete record.

### B.     AON Does Not Plausibly Allege a Breach of Contract.

AON alleges that Seagate breached the parties' non-disclosure agreements by using AON's trade secrets to develop Seagate's HAMR device during the confidentiality periods.  To state a claim for breach of contract, the plaintiff must plausibly allege "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  A contract must be interpreted "to give effect to the mutual intention of the parties as it

---

[2] In its reply brief, Seagate distinguishes the delayed discovery rule from the doctrine of fraudulent concealment, which tolls the statute of limitations.  *See* Reply at 6-7, ECF No. 34.  The Court need not address tolling because AON plausibly alleges that its claims did not accrue until 2021.

1    existed at the time of contracting." Cal. Civ. Code § 1636. The contract's language governs "if

2    the language is clear and explicit." *Id*. § 1638. Here, the third element – Seagate's breach – is at

3    issue.[3]

4          First, Seagate argues that AON faces a "Catch-22": "either its breach of contract claim is

5    time barred," or "any non-time-barred breach occurred after the contractual confidentiality period

6    had expired." Mot. at 16. But the delayed discovery rule resolves this conundrum. AON

7    plausibly alleges that it disclosed confidential information to Seagate, including via a white paper

8    that it provided on October 29, 2012, and orally during a July 23, 2013, visit to Seagate's facility.

9    Compl. ¶¶ 45, 47. AON also plausibly alleges that Seagate used AON's confidential information

10    within the five-year confidentiality periods, which lasted until October 2017 and July 2018,

11    respectively, for this information. *See* First Supplemental NDA ¶ 3.2. Specifically, AON alleges

12    that Seagate must have used its confidential information by no later than February 21, 2018, when

13    it filed one of the patent applications. Compl. ¶ 58. Based on "AON's years of experience

14    working with these technologies" and what AON observed during visits to Seagate's facilities,

15    AON believes that Seagate used AON's confidential information throughout the 2016-2018 time

16    period. *Id*. ¶ 53. And, as discussed above, AON's claim is timely because it conducted a

17    reasonable investigation but could not discover a factual basis for the alleged breach until 2021.

18    *See supra* Section III.A. Accordingly, AON may be able to state a claim for breach of the NDA

19    confidentiality obligations, notwithstanding that those obligations terminated in 2018 and AON

20    did not file this action until 2021.

21          However, AON's breach of contract claim must be dismissed for a separate reason: AON

22    does not plausibly allege that the information disclosed in 2012 or 2013 was covered by the First

23    Supplemental NDA. The First Supplemental NDA covers confidential information relating to

24    "Energy Assisted Magnetic Recording," but it does not cover information relating to "Holographic

25    Recording." First Supplemental NDA ¶ 2. AON alleges that both the 2012 and 2013 disclosures

26

27    _____
[3] Seagate also challenges AON's performance under the NDAs for failing to mark information as

28    "confidential." The Court addresses this issue below. *See infra* Section III.C. Seagate's motion
      does not challenge the existence of the non-disclosure agreements or the alleged damages.

United States District Court
Northern District of California

related to "Energy Assisted Magnetic Recording and/or Holographic Recording technologies." Compl. ¶¶ 45, 47-48.  This type of "and/or" pleading is "impermissibly vague" under these circumstances.  *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020).  As currently alleged, it is unclear whether AON's disclosures related to Holographic Recording, in which case they are not actionable, or whether they related to Energy Assisted Magnetic Recording (or both technologies), in which case the disclosures are actionable.  In its opposition brief, AON represents that the 2012 and 2013 disclosures related to Energy Assisted Magnetic Recording, and it "requests leave to amend . . . to more clearly allege" these facts.  Opp. at 17-18, ECF No. 28.  Given AON's representation, the Court grants leave to amend because the proposed amendments would cure the pleading deficiency Seagate identifies.

### C.    AON Plausibly Alleges Misappropriation of Trade Secrets.

Finally, Seagate argues that AON's trade secret claims must be dismissed because AON failed to mark the disclosed information as "CONFIDENTIAL" as required by the Master NDA. Mot. at 25; *see also id.* at 21-23 (raising the same argument as a basis for dismissing the breach of contract claim).  However, AON plausibly alleges at least one disclosure that was marked in compliance with the Master NDA.  Specifically, AON alleges that the white paper it disclosed in 2012 "was marked CONFIDENTIAL in accordance with the Master NDA."  Compl. ¶ 45.  At this stage, the Court need not address whether AON has plausibly alleged that it marked as confidential each and every written disclosure at issue, or whether AON's oral disclosures related to information "that would be reasonably interpreted to be confidential under the circumstances." Master NDA ¶ 6.  These questions can be explored in discovery.

//

//

**IV.    CONCLUSION**

For the foregoing reasons, the Motion is GRANTED IN PART as to AON's breach of contract claim and is otherwise DENIED.  Within fourteen days of this Order, AON may file an amended complaint to address the pleading deficiencies identified above.

**IT IS SO ORDERED.**

Dated: January 17, 2025

Eumi K. Lee
United States District Judge