UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACCESS OPTICAL NETWORKS, INC.,<br><br>                 Plaintiff,<br><br>   v.<br><br>SEAGATE TECHNOLOGY LLC,<br><br>                 Defendant. | Case No. 24-cv-03745-EKL (VKD)<br><br>**ORDER RE DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S TRADE SECRET DISCLOSURE**<br><br>Re: Dkt. No. 53 |

Defendant Seagate Technology LLC ("Seagate") moves for an order compelling plaintiff Access Optical Networks, Inc. ("AON") to amend its March 11, 2025 trade secret disclosure. Dkt. No. 53. In addition, Seagate seeks a protective order staying discovery until AON identifies its trade secrets with reasonable particularity, as required by California Code of Civil Procedure § 2019.210. *Id.* AON opposes the motion to compel and the request for a stay of discovery. Dkt. No. 61. The Court held a hearing on the matter on May 20, 2025. Dkt. No. 67.

Having considered the parties' submissions and arguments presented at the hearing, the Court grants Seagate's motion in part and denies it in part.[1]

**I.      BACKGROUND**

AON alleges that it owns trade secret information relating to holographic data storage ("HDS") technology. *See* Dkt. No. 39 ¶ 1; Dkt. No. 61 at 2-3. According to AON, its HDS technology uses "precisely controlled laser beams to store high volumes of digital data in three-

---

[1] The Court will issue a separate order on the associated sealing motions (Dkt. Nos. 52, 60, 62). Information publicly disclosed in this order reflects information for which the Court has determined sealing is not warranted.

1   dimensional photo-refractive crystals—resulting in higher capacity storage at higher data access
2   and transfer speeds." Dkt. No. 39 ¶ 1.  Seagate asserts that its data storage relies on Heat Assisted
3   Magnet Recording ("HAMR") technology, not HDS technology.  Dkt. No. 53 at 3-4.  AON
4   alleges that "[w]hile Seagate and AON were taking two different approaches to high-density data
5   storage, both HDS and HAMR require sophisticated optical engineering capabilities in order to
6   succeed—capabilities Seagate historically lacked and, upon information and belief, needed to
7   acquire from AON in order to produce a commercially viable HAMR hard drive." Dkt. No. 39
8   ¶ 3.

9   AON alleges that between 2012 and 2015, it shared trade secrets and confidential
10  information with Seagate pursuant to certain non-disclosure agreements, in aid of the parties'
11  discussions of a potential collaboration or potential investment by Seagate in AON. *Id.* ¶¶ 4-6, 40,
12  47 & Exs. D-F.  According to AON, Seagate abruptly terminated discussions with AON without
13  reaching a business agreement. *Id.* ¶ 6.  Thereafter, AON contends, Seagate accelerated its
14  development of HAMR technology using trade secrets and other confidential information it
15  obtained from AON. *Id.* ¶¶ 53-55.

16  AON filed this action against Seagate on May 17, 2024 in state court.  Dkt. No. 1-1.
17  Seagate removed the action to federal court, and AON amended its complaint.  Dkt. No. 1; Dkt.
18  No. 22.  On January 17, 2025, the Court granted in part Seagate's motion to dismiss the amended
19  complaint.  Dkt. No. 38.  AON filed a second amended complaint, the operative complaint.  Dkt.
20  No. 39.  AON asserts three claims against Seagate: (1) trade secret misappropriation under the
21  California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 et seq.; (2) trade secret
22  misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq.; and (3)
23  breach of contract.  Dkt. No. 39.  The parties agree that no discovery relating to any of these
24  claims may commence until AON identifies its trade secrets in compliance with California Code
25  of Civil Procedure § 2019.210.  *See* Dkt. No. 53 at 6; Dkt. No. 61 at 4; *see also* Dkt. No. 41 at 6.

26  AON served a document identifying its trade secrets on February 7, 2025.  Dkt. No. 52-3.
27  It served an amended trade secret disclosure on March 11, 2025.  Dkt. No. 52-2.  Seagate
28  challenges the sufficiency of the amended disclosure.

## II.   LEGAL STANDARD

California Code of Civil Procedure § 2019.210 provides that in an action alleging the misappropriation of trade secrets under the CUTSA, "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." Cal. C.C.P. § 2019.210. The "reasonable particularity" required by § 2019.210 should be viewed in light of the purposes of the statute:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App. 4th 826, 833-34 (2005) (citation omitted); *see also Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) (same). Thus, a trade secret claimant is required "to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Advanced Modular*, 132 Cal. App. 4th at 835 (quoting *Imax Corp. v. Cinema Techs, Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998)). Even so, compliance with the particularity requirement "does not require the designation itself to detail how the trade secret differs from matters of general knowledge in the trade." *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2018 WL 2117379, at *2 (N.D Cal., May 8, 2018). "Instead, § 2019.210 'was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the *defendant to investigate* how it might differ from matters already known and to allow the court to craft relevant discovery.'" *Id.* (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147 (2009)).

"'Reasonable particularity' mandated by section 2019.210 does not mean that the party

3

alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation." *Advanced Modular*, 132 Cal. App. 4th at 835. "Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence." *Id*. at 835-36. Rather, "reasonable particularity" means that:

> the [claimant] must make some showing that is reasonable, i.e., fair, proper, just and rational[,] under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits.

*Id*. at 836 (citations omitted).

"The degree of 'particularity' that is 'reasonable' will differ, depending on the alleged trade secrets at issue in each case." *Id*. For example, where "the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Id*. However, "at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate." *Id*. "What is required is not absolute precision, but 'reasonable particularity.'" *Id*.

In assessing the adequacy of a trade secret disclosure, "the designation should be liberally construed, and reasonable doubts about its sufficiency resolved in favor of allowing discovery to go forward." *Brescia*, 172 Cal. App. 4th at 149. A court "must exercise its sound discretion in determining how much disclosure is necessary to comply with section 2019.210 under the circumstances of the case." *Perlan Therapeutics, Inc. v. Super Ct.*, 178 Cal. App. 4th 1333, 1349 (2009).

### III. DISCUSSION

Seagate challenges the sufficiency of AON's trade secret disclosure on the following grounds: (1) the alleged trade secrets are not tied to AON's misappropriation claims; (2) the disclosure identifies "knowledge" or "use" of broad concepts and techniques; (3) the disclosure

4

does not sufficiently distinguish the alleged trade secrets from widely known concepts and techniques; and (4) one alleged trade secret relies on improper "catch-all" language.

### A. Scope of Trade Secret Disclosure

Seagate argues that AON's trade secret disclosure is "untethered to the information it alleges it disclosed to Seagate," which Seagate asserts was limited to information contained in specific documents—emails and a white paper. Dkt. No. 53 at 10-12. AON responds that it shared trade secret information with Seagate in written and non-written form, and that there is no reason to require it to limit its § 2019.210 disclosure to the information it shared with Seagate in writing. Dkt. No. 61 at 7-9.

Having considered the allegations in the operative complaint, as well as the parties' briefing, the Court is not persuaded that AON's trade secret misappropriation claims are limited to trade secret information shared with Seagate in writing. While AON may, if it wishes, cite to documents describing or evidencing the trade secret information that *was* shared in writing, it is not required to do so. *See Alta Devices, Inc. v. LG Elecs., Inc.,* No. 18-cv-00404-LHK (VKD), 2019 WL 176261, at *3 (N.D. Cal. Jan. 10, 2019) ("[I]dentification of a trade secret may include a reference to a specific document or portion of a document, so long as the trade secret is described with reasonable particularity.").

The Court denies Seagate's motion to compel on this ground.

### B. Knowledge/Use of Broad Concepts and Techniques

Seagate argues that AON improperly relies on vague and general descriptions of its alleged trade secrets by framing its disclosures in terms of "knowledge" or "use" of broad concepts or techniques. Dkt. No. 53 at 14-16. Seagate contends that these descriptions are not reasonably particular. *Id.* AON responds that there is no reason its trade secrets cannot encompass "knowledge" or "use" of the subject matter disclosed. Dkt. No. 61 at 11-12. In addition, AON argues that its disclosure identifies "specific technical insights" or "specific practices, methods, and applications," and not merely abstract concepts or techniques. *Id.* at 12-13.

The Court has examined each of AON's alleged trade secrets. While the Court agrees with AON that there is nothing inherently wrong with framing its disclosure in terms of "knowledge"

5

or "use," some of its alleged trade secrets are insufficiently specific about the confidential insights, practices, methods, or applications AON says it shared with Seagate. Other alleged trade secrets may well be described in sufficient detail, so long as AON means to claim the practice or technique as described, and not a more specific implementation. The Court discusses some examples to illustrate these points.

1. <u>Adequate disclosure, assuming AON means what it says</u>.

TS 1 states: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Dkt. No. 52-2 at 1. Here, AON describes a "practice" that produces a desired "output." The practice is described with some particularity, but if AON means to claim a more particular implementation of this practice, TS 1 does not disclose the details of that particular implementation. Thus, if the more particular implementation is intended to be claimed, TS 1 does not describe the alleged trade secret with reasonable particularity. In the Court's assessment, the same considerations apply to the following trade secrets: TS 4, 5, 6, 7, 8, 9, 10, 12[2], 13, 14, 15, 16[3], 17, 18, 19, 20, 21, and 22. AON must consider whether these trade secrets require amendment or clarification, depending on the scope of the intended claim.

2. <u>Insufficient disclosure</u>:

TS 2 states: "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *Id.* Here, AON discloses the "knowledge" that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" can be used in a particular context, and it refers to its "successful implementation of that approach." However, AON does not actually disclose what its "successful implementation" is. It is not clear

---

[2] *But see also* discussion below re "Ambiguous or insufficient disclosure."

[3] *But see also* discussion below re "Ambiguous or insufficient disclosure."

1    whether TS 2 claims a particular implementation, or the general knowledge that "█████

2    ████" can be used in the context described.  AON must clarify TS 2.

3       TS 11 is vulnerable to the same critique as TS 2.  Because it is not clear whether AON

4    claims a particular implementation, or "optimization," with respect to TS 11, it must also clarify

5    its description of that trade secret.  *See id.* at 3.

6       Relatedly, TS 3 states: "██████████████████████████████████████

7    ████████████████████████████████████████████" *Id.* at 1.  Here, AON relies

8    on a generic technical term—"optical components"—to describe a *category* of components that

9    may be used to achieve a result.  This disclosure is insufficiently specific and must be amended to

10   identify the particular components claimed.  *Alta Devices*, 2019 WL 176261, at *4 (N.D. Cal. Jan.

11   10, 2019) (requiring disclosure of particular trade secrets within broader categories); *Social Apps,*

12   *LLC v. Zynga, Inc.*, No. 11-cv-04910 YGR, 2012 WL 2203063, at *4 (N.D. Cal. June 14, 2012)

13   (finding use of "server architecture" in trade secret description insufficiently particular).  In the

14   Court's assessment, the same considerations apply to the following trade secrets: TS 12 ("optical

15   elements") and TS 16 ("optics," "optical elements").

16      Accordingly, the Court grants Seagate's motion to compel on this ground with respect to

17   TS 2, 3, 11, 12, and 16.  The Court denies Seagate's motion to compel on this ground with respect

18   to the remainder of AON's alleged trade secrets; however, to the extent AON intends to claim a

19   particular implementation that it has not disclosed, it must also amend its disclosure with respect

20   to these other alleged trade secrets.

21      **C.   Distinguished from Known or Disclosed Concepts and Techniques**

22      Seagate argues that several of AON's alleged trade secrets are "generally known concepts

23   and techniques, including those disclosed in holographic data storage textbooks or AON's own

24   patent."  Dkt. No. 53 at 16.  Seagate illustrates its argument with charts juxtaposing several of

25   AON's trade secrets and "publicly available information."  *Id.* at 17-20.  Seagate argues that

26   because the alleged trade secrets "relate to" a highly specialized technical field, AON's disclosure

27   must comply with a "more exacting level of particularity."  *Id.* at 16.  AON responds that

28   § 2019.210 does not require a disclosure that explains how the trade secrets differ from matters

generally known in the field. Dkt. No. 61 at 13. AON also argues that, in any event, its trade secrets are described in a manner that reveals how they differ from the "publicly available information" Seagate identifies in its charts. *Id.* at 14-18.

AON is correct that, as a general matter, its disclosure need not detail how an alleged trade secret differs from matters of general knowledge in the field. The more exacting disclosure standard Seagate advocates "may be required" where the alleged trade secrets "consist of *incremental* variations on, or advances in[,] the state of the art in a highly specialized technical field." *Advanced Modular*, 132 Cal. App. 4th at 836 (emphasis added). However, the fundamental requirement remains the same, regardless of the technology in question: A trade secret plaintiff must identify the alleged trade secrets "with sufficient particularity to limit the permissible scope of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Brescia*, 172 Cal. App. 4th at 147 (cleaned up). Thus, AON is not required to describe its trade secrets in a manner that proves they are not known to others, but if it contends that a particular trade secret does not merely encompass textbook-level information or information disclosed in its own published patent documents, AON must describe the purported trade secret with sufficient particularity so that this distinction may be identified and investigated by Seagate. *See Commure, Inc. v. Canopy Works, Inc.,* No. 24-cv-02592-NW (VKD), 2025 WL 1150695, at *5 (N.D. Cal. Apr. 18, 2025); *Gatan,* 2018 WL 2117379, at *2.

The Court has reviewed Seagate's charts comparing AON's alleged trade secrets with "publicly available information," as well as AON's rebuttal to those charts, where it explains how its trade secrets differ from the information Seagate summarizes. In the Court's view, the following AON trade secrets are vulnerable to Seagate's critique and should be amended so that the description identifies the purported trade in a manner that more clearly distinguishes it from what is already known or disclosed: TS 2, 9, 16, and 17.

Accordingly, the Court grants in part Seagate's motion to compel on this ground with respect to TS 2, 9, 16, and 17, and denies its motion to compel with respect to the remaining trade secrets.

**D.     Use of "Catch-all" Language**

Seagate argues that AON uses impermissibly vague "catch-all" language by employing the phrase "such as" in TS 10, as follows: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Dkt. No. 52-2 at 2-3 (emphasis added); *see* Dkt. No. 53 at 21.  AON responds that its claimed trade secret "is not ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Dkt. No. 61 at 19.

AON's explanation of TS 10 reflects a fair reading of that trade secret as described in AON's disclosure.  The Court is not persuaded that AON has relied on improper "catch-all" language to blur the boundaries of its alleged trade secret, and denies Seagate's motion to compel on this ground.

**IV.     CONCLUSION**

For the reasons explained above, the Court grants in part and denies in part Seagate's motion to compel.  AON must amend its trade secret disclosure, consistent with the direction in this order, with respect to the following alleged trade secrets:  TS 2, 3, 9, 11, 12, 16, and 17.  AON may amend its other alleged trade secrets to address concerns raised by Seagate if it wishes.  AON's amended trade secret disclosure must be served no later than **June 6, 2025**.

Meanwhile, discovery shall proceed as to all trade secrets other than TS 2, 3, 9, 11, 12, 16, and 17.  Discovery may proceed as to TS 2, 3, 9, 11, 12, 16, and 17 as soon as AON serves a disclosure that complies with the direction in this order.[4]

//

//

//

---

[4] The Court defers consideration of whether and under what circumstances AON may make additional amendments to its trade secret disclosure in the future.  *See* Dkt. No. 53 at 21-22.

**IT IS SO ORDERED.**

Dated: May 27, 2025

Virginia K. DeMarchi
United States Magistrate Judge