DAVID J.F. GROSS (SBN 290951)
david.gross@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
4800 N. Scottsdale Road, Suite 2200
Scottsdale, Arizona 85251
Telephone: +1 480 643-1850

CHAD DROWN (*admitted Pro Hac Vice*)
chad.drown@faegredrinker.com
LAUREN W. LINDERMAN (SBN 280809)
lauren.linderman@faegredrinker.com
ANDREA I. SAVAGEAU (*admitted Pro Hac Vice*)
andrea.savageau@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: +1 612 766 7000
Facsimile: +1 612 766 1600

DAVID A. BELCHER (SBN 330166)
david.belcher@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: +1 310 203 4000
Facsimile: +1 310 229 1285

Attorneys for Defendant
SEATAGE TECHNOLOGY LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ACCESS OPTICAL NETWORKS, INC., a Delaware corporation,

Plaintiff, Counter-Defendant

v.

SEAGATE TECHNOLOGY LLC, a Delaware limited liability company,

Defendant, Counter-Claimant

Case No. 5:24-cv-03745-EKL-VKD

**DEFENDANT SEAGATE TECHNOLOGY LLC'S MOTION TO COMPEL ADEQUATE § 2019.210 TRADE SECRET DISCLOSURE AND FOR SANCTIONS**

Date: August 12, 2025
Time: 10:00 a.m.
Courtroom: 2

The Honorable Virginia K. DeMarchi

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ... 1
STATEMENT OF ISSUE TO BE DECIDED AND RELIEF REQUESTED ... 1
MEMORANDUM OF POINTS AND AUTHORITIES ... 2
I. INTRODUCTION ... 2
II. BACKGROUND ... 4
III. LEGAL STANDARDS ... 9
A. Sanctions for Failure to Obey Pretrial Order. ... 9
B. Statutory Requirement to Identify Trade Secrets with Reasonable Particularity. ... 10
IV. ARGUMENT ... 10
A. AON Failed to Comply with the Court's Order Compelling Amended Disclosures ... 10
1. AON Did Not Comply with the Court's Direction to "Identify the Particular Components Claimed" for TS 3, 12, and 16. ... 11
2. AON Did Not Comply with the Court's Direction to "Amend" TS 2, 9, 16, and 17 to More Clearly Distinguish the Purported Trade Secrets from What is Already Known or Disclosed. ... 14
3. AON Did Not Comply with the Court's Direction to Clarify the Description of TS 11. ... 18
B. AON's Belated Disclosure of Over 50 Newly Asserted Trade Secrets Violates the Court's Scheduling Order. ... 19
C. AON's Third Amended Disclosure Fails To Comply With Section 2019.210's Reasonable Particularity Requirement. ... 22
1. AON's Third Amended Disclosure Continues to Improperly Rely on Generic Technical Terms Without Disclosing What, Specifically, AON is Claiming as Its Trade Secret. ... 22
2. AON's Third Amended Disclosure Improperly Claims [redacted] Trade Secrets Without Disclosing What Its [redacted] Is. ... 24
V. CONCLUSION ... 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Advanced Modular Sputtering, Inc. v. Super. Ct.*,
132 Cal. App. 4th 826 (2005) ........ 10, 15, 16, 22

*Alphonso Inc. v. Tremor Video, Inc.*,
2022 WL 17968081 (N.D. Cal. Oct. 21, 2022) ........ 10

*Alta Devices, Inc. v. LG Elecs., Inc.*,
No. 5:18-cv-00404, 2019 WL 176261 (N.D. Cal. Jan. 10, 2019) ........ 10, 13, 24

*Cyma (U.S.A.) Ltd. v. Lumondi, Inc.*,
2011 WL 1483394 (N.D. Cal. Apr. 19, 2011) ........ 9

*Diodes, Inc. v. Franzen*,
260 Cal. App. 2d 244 (1968) ........ 10

*Gatan, Inc. v. Nion Co.*,
No. 15-CV-01862-PJH, 2018 WL 2117379 (N.D. Cal. May 8, 2018) ........ 24

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ........ 9, 19

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) ........ *passim*

*Loop AI Labs Inc v. Gatti*,
No. 15-CV-00798, 2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) ........ 20

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
No. 8:19-cv-00220, 2019 WL 8108729 (C.D. Cal. Sept. 3, 2019) ........ 3

*Neothermia Corp. v. Rubicor Med., Inc.*,
345 F. Supp. 2d 1042 (N.D. Cal. 2004) ........ 20

*Perlan Therapeutics, Inc. v. Super. Ct.*,
178 Cal. App. 4th 1333 (2009) ........ 10

*Social Apps, LLC v. Zynga, Inc.*,
No. 4:11-cv-04910, 2012 WL 2203063 (N.D. Cal. June 14, 2012) ........ 10, 13, 24

*Wong v. Regents of Univ. of California*,
410 F.3d 1052 (9th Cir. 2005) ........ 9

**Statutes, Rules & Regulations**

California Civil Procedure Code § 2019(d) ........ 20

California Civil Procedure Code § 2019.210 ........ *passim*

Fed. R. Civ. P. 16(b)(4) ........ 19, 22

Fed. R. Civ. P. 16(f) ........ *passim*

Fed. R. Civ. P. 37 ........ *passim*

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 12, 2025, or a soon as thereafter as the matter may be heard, in Courtroom 2, 5th floor of the U.S. District Court located at 280 South 1st Street, San Jose, California 95113, before the Honorable Virginia K. DeMarchi, Defendant Seagate Technology LLC ("Seagate") will and hereby does move the Court to issue an order striking from Plaintiff Access Optical Networks, Inc.'s ("AON") Third Amended Trade Secret Disclosure ("Third Amended Disclosure") all the alleged trade secrets amended and/or added in violation of this Court's May 27, 2025 Order granting in part Seagate's Motion to Compel Adequate § 2019.210 Trade Secret Disclosure and for Protective Order (ECF No. 69) (the "May 27 Order") and the Court's Case Management and Scheduling Order (ECF No. 46), and, in addition or in the alternative, an order directing AON to comply with the May 27 Order and amend its Third Amended Disclosure so as to identify the alleged trade secrets at issue in this action with reasonable particularity as required by California Civil Procedure Code section 2019.210 ("Section 2019.210"). This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the declaration and exhibits filed herewith, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF ISSUES TO BE DECIDED AND RELIEF REQUESTED**

Issues to Be Decided: (1) Did AON violate this Court's May 27 Order by failing to amend its Section 2019.210 disclosure in accordance with the Court's directions; (2) Did AON violate the Court's Case Management and Scheduling Order (ECF No. 46) by disclosing more than 50 new alleged trade secrets after the Court's deadline to identify all trade secrets at issue in this action, and without good cause or leave of Court; and (3) Does AON's Third Amended Trade Secret Disclosure fail to disclose AON's alleged trade secrets with the particularity required by Section 2019.210?

Relief Requested: Seagate requests an order: (1) striking the following alleged trade secrets for violating the Court's May 27 Order: TS 2.1, 3.5, 9.1, 11.1, 12.1, 16.1, and 17.1; (2) striking the following alleged trade secrets for violating the Court's Case Management and Scheduling Order:

TS 1.2-1.3; 2.2-2.4; 3.1-3.4, 3.6-3.8; 4.2-4.3; 5.2-5.6; 6.2-6.4; 7.2-7.9; 8.2-8.4; 9.2-9.6; 12.2; 13.2; 14.2-14.3; 15.2-15.3; 16.2; 17.2; 18.2-18.5; 19.2-19.3; and 20.2-20.3; and (3) in the alternative or in addition, ordering AON to amend the following alleged trade secrets: TS 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 3.1, 3.2, 3.3, 3.4, 3.6, 3.7, 3.8, 5.2, 9.2, 11.1, 12.2, 13.2, 14.2, 15.2, 15.3, 17.2, 18.4, 18.5, 19.2, 19.3, 20.2, and 20.3.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Seagate has already once had to move to compel AON to amend its California Civil Procedure Code section 2019.210 disclosure to comply with the statute's reasonable particularity requirement. (*See* ECF No. 52-1.) The Court granted, in part, Seagate's Motion, and was clear in Ordering AON to amend certain of its alleged trade secrets, along with specific instructions about the nature of the required amendments. (ECF No. 69.) Despite the Court's clear Order, AON's Third Amended Trade Secret Disclosure ("Third Amended Disclosure")—AON's ***fourth*** attempt at identifying the trade secrets it claims to have disclosed to Seagate that are at issue in this action—failed to amend AON's disclosures in accordance with the Court's instructions, necessitating the instant Motion.[1]

Seagate does not make this motion lightly. But AON's violations of the Court's May 27 Order are stark, facially improper, and prejudicial to Seagate. As explained herein, AON is attempting to use the Court's directive to clarify its purported trade secrets to bring them into compliance with Section 2019.210 as a vehicle to instead ***broaden*** its existing purported trade secrets and ***add over 50 new ones***—plainly against the Scheduling Order and the bases for the Court's May 27 Order.

***First***, not only did AON ***fail to make any amendments whatsoever*** to several of the alleged trade secrets that the Court Ordered "must" be amended, but the amendments AON did make failed to follow the Court's instructions. Indeed, in many instances, AON's amendments actually make its disclosures ***broader*** and ***less particular***—the opposite of what the Court Ordered and what

[1] Despite the continuing issues with AON's Section 2019.210 trade secret disclosure, the parties are proceeding with discovery.

Section 2019.210 requires.

***Second***—and alarmingly—AON's Third Amended Disclosure adds ***more than 50 new alleged trade secrets***, all disclosed for the first time months after the February 7, 2025 deadline to identify all alleged trade secrets at issue in this case. In other words, what began as just ***4*** claimed trade secrets in AON's original Section 2019.210 disclosure document has now ballooned to ***76*** claimed trade secrets without any justification or explanation for why AON did not disclose ***all*** of the at-issue trade secrets by the February 7 deadline set by the Court's Case Management & Scheduling Order (ECF No. 46 ("Scheduling Order")). AON did not seek leave to assert these new alleged trade secrets (as it previously acknowledge it was required to do), nor has AON established—nor can it establish—good cause for its belated assertion of dozens of dozens of new alleged trade secrets that it purportedly disclosed to Seagate over a decade ago. AON's attempt to use the Court's directive to correct the deficiencies in its prior trade secret disclosure to introduce a truckload of new purported trade secrets (that are themselves inadequately disclosed under Section 2019.210) is improper.

***Third***, not only does AON's Third Amended Disclosure violate the Court's Orders in multiple respects, but it also violates Section 2019.210. This is now AON's ***fourth*** attempt to set forth its alleged trade secrets, yet AON still fails to meet the statute's requirements. This is telling: despite multiple bites at the apple, AON is either unwilling or unable to identify its alleged trade secrets with the level of particularity required by Section 2019.210. The fact that AON cannot adequately identify its trade secrets now strongly suggests that AON should never have filed this case and is instead hoping that a discovery process unbounded by any reasonable particularity will uncover something that AON can reverse-engineer into a purported "trade secret." This is exactly what Section 2019.210 is designed to prevent. AON's repeated attempts to use "designations that are not sufficiently concrete, leaving room for [it] to change the meaning of the trade secret after the completion of discovery" is "inadequate." *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. 8:19-cv-00220, 2019 WL 8108729, at *2 (C.D. Cal. Sept. 3, 2019).

Accordingly, Seagate moves for an order striking AON's alleged trade secrets that were amended or added in violation of this Court's May 27 Order (ECF No. 69) and the Court's

Scheduling Order (ECF No. 46). In addition, or in the alternative, Seagate seeks an order directing AON to further amend its disclosures to identify its alleged trade secrets with the reasonable particularity required by Section 2019.210 and to comply with this Court's May 27 Order.

## II. BACKGROUND[2]

On February 7, 2025—the deadline required by the Court's Scheduling Order (ECF No. 46 at 2)—AON served its initial trade secrets disclosure identifying just four alleged trade secrets at issue in this action. (*See* Linderman Decl. Ex. A.) AON's February 7 disclosure was grossly deficient; indeed, it was described by this Court as [redacted] at the May 20, 2025 hearing on Seagate's Motion to Compel an adequate Section 2019.210 disclosure. (ECF No. 72, May 20 Hr'g Tr. 7:11-12.)

AON took over a month to serve a still-inadequate Amended Trade Secret Disclosure on March 11, 2025 (Linderman Decl. Ex. B), this time containing 22 purported trade secrets. This disclosure was the subject of Seagate's prior Motion to Compel before this Court. (ECF No. 52-1.) On May 27, 2025, this Court granted, in part, Seagate's Motion to Compel a more adequate Section 2019.210 trade secret disclosure. (ECF No. 69.) Specifically, the Court found that certain of AON's purported trade secrets were "not clear"; were "insufficiently specific" because they relied "on a generic technical term . . . to describe a category of components that may be used to achieve a result"; and/or were not "clearly distinguish[ed] . . . from what is already known or disclosed." (*Id.* at 6-8.) The Court thus ordered AON to amend its trade secret disclosure with respect to alleged trade secret nos. 2, 3, 9, 11, 12, 16, and 17 to specifically cure these deficiencies. (*Id.*) The Court further found that certain of AON's purported trade secrets were not described with reasonable particularity if AON intended to claim a "more particular implementation." (*Id.* at 6.) The Court thus invited AON to amend alleged trade secret nos. 1, 4-10 and 12-22 to ensure those alleged trade secrets are described with reasonable particularity. (*Id.* at 6, 9.)

On June 6, 2025, AON served a Second Amended Trade Secret Disclosure ("Second

---

[2] The Court is already familiar with much of the factual background regarding the allegations in AON's Second Amended Complaint ("SAC"), as summarized in the briefing on Seagate's prior Motion to Compel (ECF No. 52-1). That background is incorporated by reference here, and this brief focuses instead on updates relevant to the Court's decision on the instant motion.

Amended Disclosure"). (Linderman Decl. Ex. C.) AON's Second Amended Disclosure failed to comply with the Court's May 27 Order in a number of respects.

*First*, AON ignored the portion of the Court's May 27 Order holding that AON "***must*** . . . clarify its description" of alleged trade secret no. 11 because it was "not clear whether AON claim[ed] a particular implementation, or 'optimization.'" (ECF No. 69 at 7 (emphasis added).) Indeed, AON's Second Amended Trade Secret Disclosure ***did not amend*** alleged trade secret no. 11 at all:

| Amended Disclosure: TS No. 11 | Second Amended Disclosure TS No. 11.1 |
|---|---|
| [redacted] | [redacted] |

*Second*, AON disregarded the Court's May 27 Order for AON to amend alleged trade secret nos. 3, 12, and 16 "to identify the particular components claimed." (ECF No. 69 at 7.) Specifically, the Court held that AON's reliance on "a generic technical term—'optical components'—to describe a *category* of components that may be used to achieve a result" was "insufficiently specific." (*Id.*) Rather than follow the Court's direction to "identify the particular components claimed" (*id.*), AON's Second Amended Disclosure instead did exactly what the Court told it *not* to do: AON makes [redacted] a defined term that describes a ***category of components*** ([redacted]) that may be used to ***achieve a result*** ([redacted]).

(Linderman Decl. Ex. C at 2 n.1.) In other words, AON failed to identify ***any*** "particular components claimed," instead setting forth a boundless list of possible components [redacted] certain functions, without disclosing how or in what manner those components are [redacted]

*Third*, notwithstanding the February 7 deadline to disclose all trade secrets at issue in the case (ECF No. 46 at 2), and without seeking leave of Court as AON admits it was required to do,[3] AON's Second Amended Disclosure disclosed, for the first time, ***more than 50 new alleged trade secrets***. Indeed, the preamble in AON's Second Amended Disclosure admits that these new disclosures are all [redacted] thus acknowledging that AON added dozens and dozens of new alleged trade secrets to its disclosure well after the Court's disclosure deadline. (Linderman Decl. Ex. C at 1.) AON has gone from disclosing just ***4*** alleged trade secrets in its original February 7 Trade Secret Disclosure (*id.* Ex. A) to disclosing now a total of ***76*** claimed trade secrets in its Third Amended Disclosure—a ***19x*** increase without any explanation or justification whatsoever.

*Fourth*, AON failed to follow the Court's May 27 Order that alleged trade secret nos. 2, 9, 16, and 17 "should be amended so that the description identifies the purported trade [secret] in a manner that more clearly distinguishes it from what is already known or disclosed." (ECF No. 69 at 8.) The following chart compares AON's Amended Disclosure that the Court previously analyzed with AON's Second Amended Disclosure (minor, largely non-substantive differences noted in red):

| **Amended Disclosures** | **Second Amended Disclosures** |
| --- | --- |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

[3] *See* ECF No. 72, May 20, 2025 Hr'g Tr. 27:17-19 (AON's counsel acknowledging AON would need to [redacted] to make any future amendments and that it could not [redacted]).

| | |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

Rather than ***amend*** these disclosures in accordance with the Court's direction, AON's Second Amended Disclosure added footnotes purporting to [redacted] that these asserted trade secret disclosures are [redacted] (Linderman Decl. Ex. C at 2 n.2, 8 n.3, 12 nn.4-5.)

*Fifth*, the Court invited AON to "consider" whether to amend trade secret nos. 1, 4-10 and 12-22 to "disclose the details" of a "particular implementation" to the extent AON "means to claim a more particular implementation" than what is disclosed. (ECF No. 69 at 6.) AON did not amend ***any*** of these claimed trade secrets in its Second Amended Disclosure to set forth a "more particular implementation." (*Compare* Linderman Decl. Ex. B at TS 1, 4-10, 12-22, *with* Linderman Decl. Ex. C at TS 1.1, 4.1, 5.1, 6.1, 7.1, 8.1, 9.1, 10.1, 12.1, 13.1, 14.1, 15.1, 16.1, 17.1, 18.1, 19.1, 20.1, 21.1, 22.1.)

In addition to violating the Court's Orders, AON's Second Amended Disclosure failed to adequately identify AON's alleged trade secrets with the level of particularity required by Section 2019.210, as discussed further herein.

Seagate sent a deficiency letter to AON on June 9, 2025 outlining the problems with AON's Second Amended Disclosure, and the parties conferred by videoconference on June 23, 2025. (Linderman Decl. ¶ 6 & Ex. D.) Following the parties' conferral, AON agreed to serve yet another

trade secret disclosure, but agreed only to cure its failure to amend alleged trade secret no. 11. (*Id.* ¶ 6.) Thus, on June 30, AON served a Third Amended Trade Secret Disclosure ("Third Amended Disclosure"). (Linderman Decl. Ex. E.)

AON's belated amendment to alleged trade secret no. 11 still fails to follow the Court's May 27 Order to "clarify" whether AON is claiming just the general knowledge set forth in that disclosure or, rather, "a particular implementation" or "optimization" (which particular implementation or optimization must be disclosed). (ECF No. 69 at 7.)

| **Amended Disclosure: TS No. 11** | **Third Amended Disclosure TS No. 11.1** |
|---|---|
| [redacted] | [redacted] |

Other than its belated and insufficient amendment to TS 11.1, AON refused to strike or otherwise correct the issues Seagate raised with AON's Second Amended Disclosure, all of which remain problems with AON's Third Amended Disclosure at issue in this Motion.

All of these issues with AON's Third Amended Disclosure are particularly egregious and prejudicial to Seagate when considered in context. AON's entire case is based on allegations that it disclosed certain trade secrets to Seagate pursuant to an NDA and its supplements. (ECF No. 39 ¶¶ 4-6, 40, 47 & Exs. D-F.) The only purported written disclosures under the NDAs alleged by AON—a "White Paper" and two emails (*id.*, ¶¶ 45-46, 48)—have not been produced by AON despite multiple requests by Seagate. And AON only alleged four purported trade secrets in its original trade secret disclosure at the deadline set by the Court. Yet now AON apparently contends that it actually disclosed 76 independent trade secrets to Seagate under the NDAs, trade secrets that

for some reason AON could not previously identify despite having multiple opportunities to do so.

This belies all logic. The only rational explanation for AON's continued moving and widening of its trade secret goalposts is that it cannot actually identify reasonably particular trade secrets that were disclosed to Seagate under the NDAs, and instead wants to use discovery as a fishing expedition to cobble together something from Seagate's documents that it can *ex post* claim as its own. But that is precisely what Section 2019.210 is intended to avoid. Allowing AON to use the Court's May 27 Order directing it to amend specific trade secrets to instead broaden its disclosures and add over 50 new purported trade secrets would prejudice Seagate by rendering discovery completely untethered to AON's actual allegations in its SAC and requiring Seagate to begin its investigation anew as to all of these new disclosures. The Court should not allow such gamesmanship.

## III. LEGAL STANDARDS

### A. Sanctions for Failure to Obey Pretrial Order.

"Federal Rule of Civil Procedure 16(f) provides that the Court may on motion or on its own issue any sanction authorized by Rule 37(b)(2)(A) (ii)-(vii), if a party . . . 'fails to obey a scheduling or other pretrial order.'" *Cyma (U.S.A.) Ltd. v. Lumondi, Inc.*, 2011 WL 1483394, at *3 (N.D. Cal. Apr. 19, 2011); Fed. R. Civ. P. 16(f); *see also* Fed. R. Civ. Proc. 37(b)(2) (permitting issuance of sanctions for failing to obey court order, including "striking pleadings in whole or in part"); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1117-18 (N.D. Cal. 2016) (Ryu, M.J.) (observing that Rule 37 permits preclusive sanctions based on a trade secret plaintiff's failure to comply with a court order regarding Section 2019.210 disclosure). Disregard of court orders is not a trivial matter, and courts have broad discretion to enforce such orders and impose meaningful consequences for noncompliance. *See Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." (citations and internal quotation marks omitted)).

**B. Statutory Requirement to Identify Trade Secrets with Reasonable Particularity.**

It is a longstanding requirement under California statutory and common law that a plaintiff must identify its allegedly misappropriated trade secrets with reasonable particularity "to separate it from matters of general knowledge in the trade or of special knowledge of those who are skilled in the trade." *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968). This requirement is codified in California Civil Procedure Code section 2019.210.

One of the purposes of Section 2019.210's "reasonable particularity" requirement is to "enable[] defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 5:18-cv-00404, 2019 WL 176261, at *1 (N.D. Cal. Jan. 10, 2019). The degree of particularity must be sufficient to "distinguish the trade secrets from matters within general or even highly specialized knowledge within the field." *Social Apps, LLC v. Zynga, Inc.*, No. 4:11-cv-04910, 2012 WL 2203063, at *3 (N.D. Cal. June 14, 2012). To that end, the particularity of disclosure should be commensurate with the technical complexity of the field a trade secret comes from; the more complex the technology, the more particular the disclosure should be. *Advanced Modular Sputtering, Inc. v. Super. Ct.*, 132 Cal. App. 4th 826, 836 (2005) ("Where, as here, the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required."); *see also Alphonso Inc. v. Tremor Video, Inc.*, 2022 WL 17968081, at *4 (N.D. Cal. Oct. 21, 2022) (finding trade secret disclosure insufficient where plaintiff did not "adequately explain how its alleged trade secrets are distinct from existing technology"); *Perlan Therapeutics, Inc. v. Super. Ct.*, 178 Cal. App. 4th 1333, 1352 (2009) (finding trade secret disclosure insufficient where plaintiff failed to "describe with a 'more exacting level of particularity' how its secrets differed from publicly available knowledge.").

## IV. ARGUMENT

**A. AON Failed to Comply with the Court's Order Compelling Amended Disclosures.**

The Court Ordered that AON "***must*** amend its trade secret disclosure, consistent with the direction in this order, with respect to the following alleged trade secrets: TS 2, 3, 9, 11, 12, 16, and

17." (ECF No. 69 at 9 (emphasis added).) AON failed to comply with the Court's May 27 Order to amend each of these alleged trade secrets.

**1. AON Did Not Comply with the Court's Direction to "Identify the Particular Components Claimed" for TS 3, 12, and 16.**

Seagate's prior Motion to Compel challenged AON's use of the vague and overbroad terms [redacted] and [redacted] to describe its asserted trade secrets, which failed to identify the particular [redacted] or [redacted] AON claims as its trade secrets. (ECF No. 52-1 at 15.) AON did not dispute that its reliance on these terms was improper (*see* ECF No. 62-2 at 6), and the Court agreed. As explained by the Court:

> Here [in TS 3], AON relies on a generic technical term—"optical components"—to describe a *category* of components that may be used to achieve a result. This disclosure is insufficiently specific and must be amended to identify the particular components claimed. . . . In the Court's assessment, the same considerations apply to the following trade secrets: TS 12 ("optical elements") and TS 16 ("optics," "optical elements").

(ECF No. 69 at 7.)

AON's Third Amended Disclosure fails to follow the Court's May 27 Order to "identify the particular components claimed" in TS 3, 12, and 16. Instead, AON includes a footnote defining the term [redacted]:

[redacted]

(Linderman Decl. Ex. E at 2 n.1.) This footnote serves only to exacerbate the issues Seagate and the Court previously identified with AON's use of the terms [redacted] and [redacted]

*First*, AON doubled down on its improper reliance on a generic "*category* of components" by broadly defining [redacted] to include a boundless number of possible components—namely, a [redacted] (*id.* (emphasis added))—or apparently any other of a number of undisclosed possible

components, so long as they can be used to achieve a result.[4] This definition obviously fails to adhere to the Court's instruction for AON to "identify the particular components claimed." (ECF No. 69 at 7.)

*Second*, the Court was clear in its May 27 Order that AON may not rely on a "general technical term" to describe "a *category* of components that may be used to achieve a result." (*Id.*) But that is exactly what AON's definition does: AON identifies a ***category of components*** [redacted] that may be used to ***achieve a result*** [redacted]). (Linderman Decl. Ex. E at 2 n.1.) By doing so, AON has failed to comply with the Court's May 27 Order and its disclosures remain insufficient under Section 2019.210.

*Third*, AON's new definition of [redacted] is further problematic and insufficiently particular under Section 2019.210 insofar as it fails to disclose ***how*** or ***in what manner*** the boundless list of possible components are [redacted] one or more of the four identified functions. For example: Is it the same configuration regardless of function? What configuration corresponds to which function? Is there a configuration that results in all four functions? And, most importantly, which specific configuration(s) were disclosed to Seagate and are actually at issue in this action?

*Fourth*, AON incorporates its problematic definition of [redacted] into more than a dozen of its alleged trade secret disclosures. (*See generally* Linderman Decl. Ex. E.) AON does so even where the identified functions do not make sense in the context of the particular disclosure. For example, several of AON's alleged trade secrets disclose the use of [redacted] to [redacted] (e.g., TS 1.2, 1.3, 2.2, and 2.3), but say nothing about [redacted]

---

[4] Indeed, during the parties' June 23, 2025 conferral call, AON represented that the portion of the definition setting forth exemplar components [redacted]) could be entirely deleted from the definition because the term [redacted] was intended to be defined ***only*** by the result achieved [redacted]). (Linderman Decl. ¶ 6.)

[redacted]. But, according to AON's own definition, so long as the component is [redacted] function unrelated to these purported trade secrets, it is an [redacted] as AON is using the term. This raises the question: [redacted] If not, what component and what configuration is being disclosed?

Similarly, other disclosures do not reference *any* of the four listed functions. For example, TS 3.3 discloses [redacted]); *see also id.* at TS 3.4, 3.7, and 3.8 (similarly disclosing alleged trade secrets that do not reference any of the four functions from AON's definition of [redacted]).) TS 3.3 says nothing about [redacted]—the four functions that make up AON's definition of [redacted] It is thus entirely unclear in the context of this disclosure what component, exactly, is being disclosed or how the component has been configured, etc., rendering the disclosure wholly insufficient under Section 2019.210.

In short, by keeping [redacted] as an unbounded category of components defined solely by function, AON's Third Amended Disclosures fails to "identify the particular components claimed" as the Court required. (ECF No. 69 at 7.) If anything, AON's amendment made its disclosures *less* particularized. AON's alleged trade secret nos. 3.5, 12.1, and 16.1 (which correspond to TS 3, 12, and 16 from its Amended Disclosure that the Court Ordered be amended) should accordingly be stricken based on AON's violations of this Court's May 27 Order. *See* Fed. R. Civ. P. 16(f), 37(b)(2); *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1117-18.

Moreover, the defined term [redacted] is used in each of the following additional alleged trade secrets in AON's Third Amended Disclosure, rendering each one improper under both this Court's May 27 Order and Section 2019.210: TS 1.1, 1.2, 1.3, 2.2, 2.3, 3.2, 3.3, 3.4, 3.6, 3.7, and 3.8. *See, e.g.*, *Alta Devices, Inc.*, 2019 WL 176261, at *4 (requiring disclosure of particular trade secrets within broader categories); *Social Apps, LLC*, 2012 WL 2203063, at *4 (finding use

of "server architecture" in trade secret description insufficiently particular). These disclosures should also be stricken for this reason and as further described below, as many of these are newly disclosed alleged trade secrets added well after the deadline set by the Court.

**2. AON Did Not Comply with the Court's Direction to "Amend" TS 2, 9, 16, and 17 to More Clearly Distinguish the Purported Trade Secrets from What is Already Known or Disclosed.**

Seagate's prior Motion to Compel challenged several of AON's disclosures because they did not distinguish what AON is claiming as its trade secrets from what is (and was) already known in the field. (ECF No. 52-1 at 16-21; *see also* ECF No. 62-2 at 7-9.) Once again, the Court agreed with Seagate:

> [I]f [AON] contends that a particular trade secret does not merely encompass textbook-level information or information disclosed in its own published patent documents, AON must describe the purported trade secret with sufficient particularity so that this distinction may be identified and investigated by Seagate. . . . In the Court's view, the following AON trade secrets are vulnerable to Seagate's critique and should be amended so that the description identifies the purported trade [secret] in a manner that more clearly distinguishes it from what is already known or disclosed: TS 2, 9, 16, and 17.

(ECF No. 69 at 8.)

And, once again, AON failed to comply with the Court's May 27 Order. Indeed, AON's amended alleged trade secret nos. 2.1, 9.1, 16.1, and 17.1 (which correspond to TS 2, 9, 16, and 17 that the Court Ordered be amended) are substantively identical to AON's prior disclosures, as shown by the following chart (minor, largely non-substantive differences noted in red):

| Amended Disclosures | Third Amended Disclosures |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

| | |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |

As is readily apparent from the above comparisons, AON ***did not amend*** TS 9 or 17, and made only minor amendments to TS 2 and 16 that do not address the Court's directive that AON "amend[]" the disclosures "so that the description identifies the purported trade [secret] in a manner that more clearly distinguishes it from what is already known or disclosed." (ECF No. 69 at 8.)

AON insists that it *did* amend these disclosures insofar as it added footnotes to each of them purporting to [redacted] that these asserted trade secret disclosures are [redacted] (Linderman Decl. Ex. E at 2 n.2, 8 n.3, 12 nn.4-5.) But dropping a footnote to include a long narrative explanation about how the ***unamended*** disclosures are supposedly distinguishable from public references does not comply with the Court's direction for AON to "***amend***" ***the actual trade secret itself*** to identify how it is distinguishable from what is already known or disclosed.

This is not mere form over substance. AON's Section 2019.210 disclosures are a key pleading in this trade secret misappropriation case that will be relied on by Seagate and the Court in framing the scope of discovery, shaping Seagate's defenses, and defining the scope of AON's claims at summary judgment and, possibly, trial. *See, e.g.*, *Advanced Modular*, 132 Cal. App. 4th at 833-34 (discussing the purposes of Section 2019.210). AON's disclosures should rise and fall on their own terms, without reference to long, convoluted footnotes that fail to account for the large body of public information regarding the data storage technology at issue. (*Cf.* SAC ¶ 1 (alleging that AON's alleged trade secrets relate to AON's specific "implementation of holographic data storage technology," a technology that has also been "developed by AON's competitors").) Consistent with this Court's May 27 Order and Section 2019.210, AON was required to identify (without explanatory footnotes) its alleged trade secrets in a manner that "clearly distinguishes

[them] from what is already known or disclosed." (ECF No. 69 at 8); *see also Advanced Modular*, 132 Cal. App. 4th 836 (requiring a trade secret plaintiff in a case involving "incremental variations on, or advances in the state of the art in a highly specialized technical field" to disclose its trade secrets in a manner that "distinguish[es them] from matters already known to persons skilled in that field").

Moreover, AON's newly added footnotes fail to clarify whether and in what way its unamended disclosures are distinguishable from what is already known or disclosed. Indeed, the limited additional information AON does provide does not cure the issues Seagate and the Court previously identified:

- TS 2.1: The footnote to alleged trade secret 2.1 does not even appear to make grammatical sense in its reference to knowledge [redacted] (Linderman Decl. Ex. E at 2 n.2.) Moreover, to the extent AON is claiming as its trade secret only the [redacted] that it has [redacted] an otherwise publicly disclosed concept, AON's disclosure itself should have been amended to say that (and to disclose the details of its "successful implementation"). (*Id.*)
- TS 16.1: Aside from the addition of a single clause—[redacted]—the footnote to alleged trade secret 16.1 merely parrots the unamended trade secret description along with the conclusory claim that public references do not disclose it. (Linderman Decl. Ex. E at 12 & n.4.) This is plainly insufficient. And, as Seagate pointed out previously (ECF No. 52-1 at 20-21; ECF No. 62-2 at 9), neither the footnote to alleged trade secret 16.1 nor the disclosure itself actually disclose AON's [redacted] further rendering the disclosure insufficient under Section 2019.210.
- TS 9.1 & 17.1: For both alleged trade secrets 9.1 and 17.1, the corresponding footnotes appear to clarify that the purported trade secret is only AON's [redacted]

regarding otherwise known concepts.[5] (Linderman Decl. Ex. E at 8 n.3, 12 n.5.) If that is the case, AON's disclosure itself should have been amended to clarify that it is this [redacted]—and only this [redacted]—that AON is claiming as its trade secret.

Finally, the Court also Ordered AON to amend TS 2 (corresponding to alleged trade secret no. 2.1 in AON's Third Amended Disclosure) to "clarify" whether AON is claiming "a particular implementation, or the general knowledge that [redacted] can be used in the context described." (ECF No. 69 at 6-7.) Seagate understands from the parties' conferral that AON's deletion of the phrase [redacted] is intended to convey that AON is claiming only the "general knowledge that [redacted] can be used in the context described" and is not claiming any "particular implementation" in alleged trade secret no. 2.1. As Seagate already explained in its prior Motion to Compel, however, the general knowledge of the requirement of [redacted] has been publicly disclosed. (ECF No. 52-1 at 17.) In response, AON conceded that the [redacted] has been disclosed. (ECF No. 60-3 at 15.) Thus, by AON's own admission, as amended, alleged trade secret no. 2.1 fails to distinguish itself from what is already known or disclosed.

AON was required by this Court's May 27 Order to amend TS 2, 9, 16, and 17 so that it is clear, on the face of the disclosures, how the claimed trade secrets are distinguishable from what is already known or disclosed. AON's failure to do so violates the Court's May 27 Order and renders these alleged trade secrets still insufficient under Section 2019.210. Trade secret nos. 2.1, 9.1, 16.1, and 17.1 should accordingly be stricken. *See* Fed. R. Civ. P. 16(f), 37(b)(2); *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1117-18.

---

[5] Regarding alleged trade secret no. 9.1, Seagate previously pointed out that the use of [redacted] is well known in the industry, as is the concept that [redacted]. (ECF No. 52-1 at 18.) Regarding alleged trade secret no. 17.1, Seagate previously pointed out that [redacted]. (*Id.* at 20.)

### 3. AON Did Not Comply with the Court's Direction to Clarify the Description of TS 11.

The Court previously held that AON's TS 11 was "vulnerable to the same critique as TS 2"—i.e., that it was "not clear whether" AON was claiming "a particular implementation, or 'optimization,'" as opposed to claiming only "the general knowledge" set forth in the disclosure. (ECF No. 69 at 6-7.) And, to the extent AON intended to claim a particular implementation or optimization, the Court required that implementation or optimization to be disclosed. (*See id.*)

In its Second Amended Disclosure served on the June 6 deadline set by the Court, AON ***did not amend TS 11 at all***, in violation of the Court's clear Order that this alleged trade secret "must" be amended. (ECF No. 69 at 7, 9; *compare* Linderman Decl. Ex. B at TS 11, *with* Linderman Decl. Ex. C at TS 11.1.) Over three weeks later, and only at Seagate's insistence, AON served a Third Amended Disclosure on June 30, purporting to amend TS 11 in accordance with the Court's instructions:

| Amended Disclosure: TS No. 11 | Third Amended Disclosure TS No. 11.1 |
|---|---|
| [redacted] | [redacted] |

According to AON, amended TS 11.1 clarifies that AON is disclosing an optimization, and not just general knowledge. Seagate disagrees that the amended disclosure—which literally claims [redacted]—clarifies that AON is claiming only an optimization, such that the disclosure fails to comply with this Court's May 27 Order and should be stricken. *See* Fed. R. Civ. P. 16(f), 37(b)(2); *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1117-18.

Even if it were clear that AON is claiming only an optimization, AON still fails to disclose what that specific optimization is, as the Court's May 27 Order required it to do. (*See* ECF No. 69 at 6-7.) This deficiency matters, especially because—as Seagate pointed out previously—the use of [redacted] or [redacted] is well known in the industry. (*See* ECF No. 52-1 at 18 (citing a public source for this information).) As disclosed, AON's TS 11.1 fails to disclose AON's claimed "optimization" and fails to make clear how the information AON is claiming is distinguishable from what is already known or disclosed in the field. For this reason, too, TS 11.1 should be stricken or, at a minimum, AON should be ordered to amend so that it complies with the Court's May 27 Order and Section 2019.210.

**B. AON's Belated Disclosure of Over 50 Newly Asserted Trade Secrets Violates the Court's Scheduling Order.**

AON's Third Amended Disclosure includes ***54 new*** alleged trade secrets, all added months after the Court's February 7, 2025 deadline to identify all trade secrets at issue in this case. (ECF No. 46 at 2 (setting "deadline to identify . . . trade secrets pursuant to Cal. Civ. Proc. Code § 2019.210).) Indeed, the preamble to the Third Amended Disclosure admits that these new disclosures are all [redacted] thus acknowledging that AON is attempting to add new alleged trade secrets to its disclosure well after the Court's deadline. (Linderman Decl. at Ex. E at 1.) (emphasis added).)

The Court's May 27 Order on Seagate's Motion to Compel directed AON to ***amend*** its previously disclosed trade secrets; it did not grant AON permission to assert additional alleged trade secrets in this case. Nor did AON seek Court permission to assert these previously undisclosed trade secrets, despite acknowledging at the May 20 hearing that AON would need to [redacted] to make any future amendments and that it could not [redacted] (ECF No. 72 May 20 Hr'g Tr. 27:17-19.) Moreover, AON's belated disclosure of dozens of newly asserted trade secrets—months after the February 7 deadline—amounts to a violation of (or, at the least, an attempt to modify) the Court's Scheduling Order (ECF No. 46). Of course, AON must establish good cause and obtain leave of Court to modify a scheduling order. *See* Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992) ("[Scheduling] [o]rders

entered before the final pretrial conference may be modified upon a showing of 'good cause.'").[6]

AON did not seek leave of Court and did not—and cannot—meet its burden to establish good cause here. Indeed, AON has offered absolutely no justification for its failure to disclose these alleged trade secrets by the February 7 deadline set forth in the Court's Scheduling Order (much less its failure to disclose them in its March 11 Amended Disclosures that were the subject of Seagate's prior Motion to Compel). At most, AON has pointed to the Court's invitation for AON to amend trade secret nos. 1, 4-10 and 12-22 to "clarif[y]" those disclosures if AON "means to claim a more particular implementation" of the disclosed practice. (ECF No. 69 at 6.) To be clear, however, AON did not amend ***any*** of trade secret nos. 1, 4-10 and 12-22 to disclose a "more particular implementation." Instead, AON retained ***each and every one*** of its insufficient disclosures and, on top of that, added dozens and dozens of new disclosures.

AON characterizes its new disclosures as purportedly more "narrow" implementations of the same alleged trade secrets it had previously disclosed. But AON did not, for example, amend its original disclosures to add specific implementation details to each original disclosure; instead, AON asserts that all 54 newly added trade secrets are [redacted] thus facially expanding its disclosure to include dozens of new trade secrets far past the Court's deadline. (Linderman Decl. Ex. E at 1.)

Moreover, the dozens and dozens of newly asserted trade secrets cannot reasonably be characterized as disclosures of more "narrow" implementations of previously disclosed trade secrets. Indeed, many of the new disclosures are, on their face, ***broader*** than the alleged trade secrets that AON had claimed previously. For example:

- TS 1.1, 1.2, & 1.3: AON broadened TS 1 by replacing the more-specific [redacted] with the more general category of [redacted] (*Compare*

[6] *See also Loop AI Labs Inc v. Gatti*, No. 15-CV-00798, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (allowing "future amendment[s] to the [section 2019.210] disclosure" only "upon a showing of good cause"); *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004) (holding that the purpose of section 2019(d) would be frustrated if parties had "free rein to amend [their] trade secret identification without limits," and that a party must demonstrate good cause to amend a trade secret disclosure).

Linderman Decl. Ex. B at TS 1, *with* Ex. E at TS 1.1, 1.2, 1.3.)

- TS 1.2 & 1.3: AON also broadened TS 1 by replacing the more-specific [redacted] with the more general category of [redacted] (*Compare* Linderman Decl. Ex. B at TS 1, *with* Ex. E at TS 1.2, 1.3.)
- TS 8.2: AON broadened TS 8 by omitting the requirement that the use of the specified [redacted] be tied to the use of [redacted]. (*Compare* Linderman Decl. Ex. B at TS 8, *with* Ex. E at TS 8.2.)

In addition, others of the new disclosures are wholly untethered to the prior disclosures, notwithstanding AON's putting them in the same sub-category. For example:

- TS 2.4: AON's prior TS 2 involved use of [redacted], but TS 2.4 newly discloses unrelated concepts regarding a [redacted] (*Compare* Linderman Decl. Ex. B at TS 2, *with* Ex. E at TS 2.4.)
- TS 3.3 & 3.4: AON newly discloses use of [redacted] something that was not disclosed in TS 3 (or anywhere in AON's prior disclosure). (*Compare generally* Linderman Decl. Ex. B, *with* Ex. E at TS 3.3, 3.4.)
- TS 5.4: AON's prior TS 5 involved use of a [redacted], but TS 5.4 newly discloses unrelated concepts regarding using [redacted] (*Compare* Linderman Decl. Ex. B at TS 5, *with* Ex. E at TS 5.4.)

Indeed, AON's amendment attempts to obfuscate its addition of dozens of new trade secrets by including them as sub-decimals of now-broadened categories 1-22, while at the same time explicitly stating that the sub-decimals do not substantively limit or affect the new trade secrets in any way. (Linderman Decl. at Ex. E at 1 ([redacted]).)

AON cannot rely on the Court's allowing AON to ***amend*** certain of its trade secrets to claim a "more particular implementation" as free license to add dozens and dozens of newly disclosed trade secrets that in no way make its prior disclosures more particularized (and that are, themselves, insufficiently particular under Section 2019.210). Seagate therefore requests that the Court strike alleged trade secret nos. 1.1-1.3; 2.2-2.4; 3.1-3.4, 3.6-3.8; 4.2-4.3; 5.2-5.6; 6.2-6.4; 7.2-7.9; 8.2-8.4; 9.2-9.6; 12.2; 13.2; 14.2-14.3; 15.2-15.3; 16.2; 17.2; 18.2-18.5; 19.2-19.3; and 20.2-20.3. *See* Fed. R. Civ. P. 16(b)(4), 16(f), 37(b)(2).

**C. AON's Third Amended Disclosure Fails To Comply With Section 2019.210's Reasonable Particularity Requirement.**

In addition to violating this Court's Orders, AON's Third Amended Disclosure violates Section 2019.210's reasonable particularity requirement. As the Court previously recognized, Section 2019.210's particularity requirement differs depending on the trade secrets at issue. (*See* ECF No. 69 at 4 (citing *Advanced Modular*, 132 Cal. App. 4th at 836).) Here, AON itself alleges in its SAC that the optical data storage systems at issue comprise a "highly specialized technology." (SAC ¶ 22; *see also id.* ¶¶ 1-3, 5, 19, 20, 23, 56, 62 (AON describing the relevant technology as "sophisticated" or "advanced").) Moreover, AON alleges that its alleged trade secrets relate to AON's specific "implementation of holographic data storage technology," a technology that has also been "developed by AON's competitors." (*Id.* ¶ 1; *see also* ECF No.60-3 at 18 (arguing AON's alleged trade secrets "extend beyond" the technological concepts covered by holographic data storage textbooks).) In other words, as AON concedes, the trade secrets at issue in this case "consist of incremental variations on, or advances in the state of the art in a highly specialized technical field." *Advanced Modular*, 132 Cal. App. 4th at 836. These types of trade secrets require "a more exacting level of particularity" to satisfy the requirements and purposes of Section 2019.210. *Id.*

**1. AON's Third Amended Disclosure Continues to Improperly Rely on Generic Technical Terms Without Disclosing What, Specifically, AON is Claiming as Its Trade Secret.**

Seagate's prior Motion to Compel faulted AON for its use of broad technical terms that serve to broaden, not narrow, the overarching technical concepts and categories AON asserts as its trade secrets. (*See* ECF No. 52-1 at 14-15.) The Court agreed that reliance on a "generic technical

term" is improper. (ECF No. 69 at 7.) Instead, AON must disclose what, specifically, it is claiming as its trade secret. (*See id.*)

Despite the Court's prior instruction, AON's Third Amended Disclosure continues to use and rely on generic technical terms to describe its purported trade secrets. For example[7]:

- [redacted] or [redacted]: As noted above, AON *broadened* certain of its alleged trade secrets through its use of the general technical category [redacted] or [redacted] which terms are used throughout AON's disclosures. (*See generally* Linderman Decl. Ex. E.) This term is overly broad and nonspecific about what [redacted] AON is claiming it disclosed to Seagate as its trade secret. [redacted] might include, for example, CDs, DVDs, Blue-ray, magnetic media, or magneto-optical media. AON must be more specific about the specific type of recording media it is claiming in each of its disclosures, which it is obviously capable of doing insofar as certain of its current and prior disclosures more specifically identified the type of [redacted] at issue (e.g., [redacted] or [redacted]). (Linderman Decl. Ex. E at TS 1.1, 8.2-8.4, 9.2-9.4, 18.3.)
- [redacted]: AON's Third Amended Disclosure introduces the new phrase [redacted] and uses the phrase in several disclosures. (Linderman Decl. Ex. E at TS 1.2, 1.3, 2.2, 2.3.) This phrase is overly broad and nonspecific about what [redacted] AON is claiming it disclosed to Seagate as its trade secret. A [redacted] might include, for example, a light-emitting diode (LED), superluminescent diode (SLED), laser, halogen lamp, lightbulb, etc.
- [redacted]: AON's Third Amended Disclosure uses the term [redacted] in several disclosures. (Linderman Decl. Ex. E at TS 2.1, 3.1, 12.2, 13.2, 14.2, 15.2, 18.4, 18.5, 19.2, 19.3, 20.2, 20.3.) This term is overly broad and nonspecific about what [redacted] AON is claiming it disclosed to Seagate as its trade secret. [redacted] could include

[7] As noted *supra* at 11-13 and 16, AON's use of the defined term [redacted] is also insufficiently specific and violates section 2019.210. Seagate incorporates those arguments here.

many types of [redacted], such as those identified above.

- [redacted]: AON's Third Amended Disclosure also introduces the new term [redacted] (Linderman Decl. Ex. E at TS 1.3, 2.3.) This phrase is overly broad and nonspecific about what device AON is claiming it disclosed to Seagate as its trade secret. A [redacted] might include, for example, a waveguide, metamaterial, sensor, solar cell, etc.

Consistent with the Court's May 27 Order and Section 2019.210, AON may not rely on these overly broad, nonspecific, general technical terms to identify its alleged trade secrets. Disclosures using these terms and phrases are insufficiently specific and must be amended to identify the particular type of [redacted] being claimed. (*Cf.* ECF No. 69 at 7 (citing *Alta Devices*, 2019 WL 176261, at *4; *Social Apps LLC*, 2012 WL 2203063, at *4)); *see also Loop AI Labs Inc.*, 195 F. Supp. 3d at 1114 ("Plaintiff's use of technical language does not mask the fact that its descriptions fail to identify any 'confidential information' described therein.").

**2. AON's Third Amended Disclosure Improperly Claims [redacted] Trade Secrets Without Disclosing What Its [redacted] Is.**

The Court previously rejected AON's attempt to disclose as its alleged trade secret a "successful implementation" of an approach without "actually disclos[ing] what its 'successful implementation' is." (ECF No. 69 at 6.) Despite this prior admonition, AON's Third Amended Disclosure repeats the same improper tactic, now disclosing numerous purported [redacted] trade secrets without actually disclosing or describing what AON's [redacted] is. (*See* Linderman Decl. Ex. E at TS 3.6, 5.2, 9.2, 13.2, 15.2, 15.3, 17.2, 19.3, 20.3.) AON cannot simply state that its trade secrets consist of [redacted] of its [redacted] of certain otherwise-known concepts without identifying the specifics of its [redacted] cases. *See e.g., Gatan, Inc. v. Nion Co.*, No. 15-CV-01862-PJH, 2018 WL 2117379, at *3 (N.D. Cal. May 8, 2018) ("Absent those 'details' [plaintiff] can later claim that different 'details' disclosed during discovery were in fact the trade secrets that the § 2019.210 designation referenced."). This argument applies only to alleged trade secret nos. 3.6, 5.2, 9.2, 13.2, 15.2, 15.3, 17.2, 19.3, 20.3 in the parenthetical above.

## V. CONCLUSION

For the foregoing reasons, Seagate respectfully requests that the Court issue an Order:

(1) striking the following alleged trade secrets for violating the Court's May 27 Order on Seagate's Motion to Compel: TS 2.1, 3.5, 9.1, 11.1, 12.1, 16.1, and 17.1;

(2) striking the following alleged trade secrets for violating the Court's Scheduling Order: TS 1.1-1.3; 2.2-2.4; 3.1-3.4, 3.6-3.8; 4.2-4.3; 5.2-5.6; 6.2-6.4; 7.2-7.9; 8.2-8.4; 9.2-9.6; 12.2; 13.2; 14.2-14.3; 15.2-15.3; 16.2; 17.2; 18.2-18.5; 19.2-19.3; and 20.2-20.3; and

(3) in the alternative or in addition, ordering AON to amend the following alleged trade secrets to comply with Section 2019.210's reasonable particularity requirement: TS 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 3.1, 3.2, 3.3, 3.4, 3.6, 3.7, 3.8, 5.2, 9.2, 11.1, 12.2, 13.2, 14.2, 15.2, 15.3, 17.2, 18.4, 18.5, 19.2, 19.3, 20.2, and 20.3.

Dated: July 8, 2025

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

By: *<u>/s/ Lauren W. Linderman</u>*
David J.F. Gross
Chad Drown (*admitted Pro Hac Vice*)
Lauren W. Linderman
Andrea I. Savageau (*admitted Pro Hac Vice*)
David A. Belcher

Attorneys for Defendant
SEAGATE TECHNOLOGY LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Lauren W. Linderman*
Lauren W. Linderman

Attorneys for Defendant
SEAGATE TECHNOLOGY LLC