UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ACCESS OPTICAL NETWORKS, INC., Plaintiff, v. SEAGATE TECHNOLOGY LLC, Defendant. | Case No. 24-cv-03745-EKL (VKD) **ORDER RE DEFENDANT'S SECOND MOTION TO COMPEL PLAINTIFF'S TRADE SECRET DISCLOSURE AND FOR SANCTIONS** Re: Dkt. No. 79 |
|---|---|

Defendant Seagate Technology LLC ("Seagate") moves for an order striking certain alleged trade secrets on plaintiff Access Optical Networks, Inc.'s ("AON") third amended trade secret disclosure and/or requiring AON to further amend certain alleged trade secrets. Dkt. No. 79. AON opposes the motion. Dkt. No. 87. The Court held a hearing on the matter on August 12, 2025. Dkt. Nos. 96, 106. Following the hearing, the parties filed supplemental briefing addressing how, if at all, the Ninth Circuit's analysis in *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, No. 23-16093, 2025 WL 2315671 (9th Cir. Aug. 12, 2025) should inform the Court's consideration of Seagate's motion. *See* Dkt. Nos. 102, 107, 108.

Having considered the parties' submissions and arguments presented at the hearing, the Court grants Seagate's motion in part and denies it in part.[1]

I.  **BACKGROUND**

As summarized in this Court's prior order, AON alleges that it owns trade secret

---

[1] The Court will issue a separate order on the associated sealing motions (Dkt. Nos. 78, 86, 90). Information publicly disclosed in this order reflects information for which the Court has determined sealing is not warranted.

information relating to holographic data storage ("HDS") technology. *See* Dkt. No. 69 at 1. AON alleges that between 2012 and 2015, it shared trade secrets and confidential information with Seagate pursuant to certain non-disclosure agreements, which Seagate has used to accelerate its development of its own technology. *Id.* at 2. AON asserts three claims against Seagate: (1) trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq*.; (2) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.; and (3) breach of contract. *Id.* The parties previously agreed that no discovery relating to any of these claims may commence until AON identifies its trade secrets in compliance with California Code of Civil Procedure § 2019.210. *See* Dkt. No. 53 at 6; *see also* Dkt. No. 41 at 6. However, Seagate does not seek a stay of discovery pending resolution of this motion. *See* Dkt. No. 79 at 2 n.1.

As required by the scheduling order entered in this action, Dkt. No. 46, AON served a document identifying its trade secrets on February 7, 2025. Dkt. No. 52-3. After Seagate complained, AON served an amended trade secret disclosure on March 11, 2025, listing 22 alleged trade secrets. Dkt. No. 52-2. Seagate challenged the sufficiency of AON's amended trade secret disclosure and moved to compel further amendments. Dkt. No. 53.

On May 27, 2025, the Court issued an order granting in part and denying in part Seagate's motion to compel. Dkt. No. 69. In short, the Court ordered AON to amend its trade secret disclosure with respect to TS 2, 3, 9, 11, 12, 16, and 17, and permitted AON to amend its other alleged trade secrets to address Seagate's concerns. *Id.* at 9.

AON served its second amended trade secret disclosure on June 6, 2025, Dkt. No. 78-6, and a third amended trade secret disclosure (amending further only TS 11) on June 30, 2025, Dkt. No. 78-8. AON's third amended disclosure now includes 76 alleged trade secrets, all of which AON describes as "independent, self-contained and severable trade secrets." *Id.* at 1.

## II.   LEGAL STANDARD

At the time Seagate filed its first motion to compel AON's trade secret disclosures, the parties had agreed that no discovery relating to any of these claims may commence until AON identified its trade secrets in compliance with California Code of Civil Procedure § 2019.210. *See*

Dkt. No. 69 at 2. While Seagate no longer seeks a stay of discovery pending resolution of its second motion, the parties acknowledge that § 2019.210 applies to AON's CUTSA claim, and they appear to agree that § 2019.210's "reasonable particularity" requirement provides a useful framework for managing discovery with respect to AON's DTSA claim as well. *See* Dkt. No. 107 at 1, 4; Dkt. No. 108 at 3-4.

For purposes of resolving this motion to compel, the Court relies on the "reasonable particularity" requirement, described at length in the Court's May 27, 2025 order, as a guide for managing discovery. *See Quintara,* 2025 WL 2315671, at *4 (district courts have "broad Rule 16 pretrial management powers" to address the "delicate problem" of balancing the parties' discovery of each other in trade secret cases, including "specific authority to order that trade secrets 'be revealed only in a specified way'").

### III.   DISCUSSION

Seagate contends that AON failed to amend its trade secret disclosure as ordered and added dozens of new trade secrets without seeking or obtaining leave, well after the February 7, 2025 deadline in the scheduling order. In addition, Seagate objects that many of AON's new alleged trade secrets are described in a manner that is insufficiently particular. AON responds that it has complied with the Court's order requiring amendment, and that it was expressly permitted to add the new alleged trade secrets. The Court addresses each dispute separately.

####    A.   Trade Secret Disclosures that Required Amendment

The Court ordered AON to "amend its trade secret disclosure, consistent with the direction in [the May 27, 2025] order, with respect to the following alleged trade secrets: TS 2, 3, 9, 11, 12, 16, and 17." Dkt. No. 69 at 9. Seagate argues that AON has not complied with this part of the order; AON responds that it has.

#####         1.   TS 3, 12, 16 – "Optical Components"

With respect to TS 3, 12, and 16,[2] the Court previously observed that AON relied on generic technical terms—"optical components," "optical elements," "optics"—to describe a

---

[2] AON has renumbered its alleged trade secrets such that TS 3, 12, and 16 correspond to current alleged trade secrets TS 3.5, 12.1, and 16.1. *Compare* Dkt. Nos. 52-2 and 78-8.

3

1    *category* of components that may be used to achieve a result. Dkt. No. 69 at 7. The Court
2    concluded that this disclosure was insufficiently specific and must be amended to identify the
3    particular components claimed. *Id.*
4        Seagate argues that, despite the Court's order directing AON to "identify the particular
5    components claimed," AON continues to rely on a category of components, defined using a list of
6    non-exhaustive examples that may be used to achieve one or more of four so-called ▇
7    ▇▇▇ Dkt. No. 79 at 5. AON responds that the optical component or element
8    can ▇▇ so long as that component/element performs one or more of the four
9    functions. Dkt. No. 87 at 12. AON now relies on the following definition of "Optical
10   Components" in multiple alleged trade secrets, including TS 3, 12, and 16: ▇
11   ▇
12   ▇
13   ▇
14   ▇ Dkt. No. 78-8 at 2 n.1.
15       It is difficult to see how AON's current trade secret disclosure complies with the Court's
16   direction regarding AON's use of generic technical terms to refer to a category of components.
17   The Court agrees with Seagate that AON's current disclosure is broader—and less particular—
18   than its prior disclosure. Moreover, because AON has taken an expansive, one-size-fits-all
19   approach in using and defining the term "Optical Components" in its current disclosure, the scope
20   of each individual trade secret is somewhat more obscured. For these trade secrets, it remains
21   unclear what exactly AON contends it disclosed to Seagate and/or that Seagate misappropriated,
22   including the specific configurations of components (if there are any such configurations) that
23   AON contends are its secrets. *See Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.,* No. 21-cv-
24   01129-EJD (VKD), 2021 WL 5197215, at *4 (N.D. Cal. Nov. 9, 2021) (rejecting trade secret
25   disclosure that purported to encompass categorically all possible combinations of multiple
26   elements or process steps). While the context in which the term "Optical Components" is used in
27   particular trade secrets may convey a more defined scope, Seagate should not have to rely on
28   context to try to infer which component(s), configuration(s) or function(s) AON claims to have

disclosed to Seagate and/or that Seagate misappropriated.

Because AON has not adequately identified the components, configurations, or functions that comprise the "Optical Components" of TS 3, 12, and 16, these disclosures do not serve as an appropriate guide for discovery.

### 2. TS 2, 9, 16 and 17 – Distinguished from Known Concepts/Techniques

With respect to TS 2, 9, 16, and 17,[3] the Court previously stated: "AON is not required to describe its trade secrets in a manner that proves they are not known to others, but if it contends that a particular trade secret does not merely encompass textbook-level information or information disclosed in its own published patent documents, AON must describe the purported trade secret with sufficient particularity so that this distinction may be identified and investigated by Seagate." Dkt. No. 69 at 8. Elsewhere in its prior order, the Court emphasized that the necessary disclosure requires only that the trade secret claimant "identify the alleged trade secret with adequate detail to allow the *defendant to investigate* how it might differ from matters already known and to allow the court to craft relevant discovery." *Id*. at 3 (quoting authority).

Seagate argues that although AON was required to amend TS 2, 9, 16, and 17 to address objections that these trade secrets were not adequately described such that they could be distinguished from matters already known, AON made only minor, non-substantive amendments to the disclosures. Seagate also objects to AON's use of footnotes appended to each disputed trade secret, which purport to explain why AON believes each is "distinguishable from public references." *See* Dkt. No. 79 at 14-15. AON's response to these arguments is perplexing. Its current disclosures for TS 2, 9, 16, and 17 are still formulated at a relatively high-level, relying on language such as "the knowledge that" or "the practice of," but its opposition to the motion indicates that it is really relying on the footnotes that accompany each alleged trade secret. *See* Dkt. No. 79 at 14-15; Dkt. No. 87 at 13-15.

AON does not need to prove that its trade secrets are distinguishable from what is already known, but it still needs to clearly state what its trade secrets *are*. It has not yet complied with this

---

[3] TS 2, 9, 16, and 17 correspond to current alleged trade secrets TS 2.1, 9.1, 16.1, and 17.1. *Compare* Dkt. Nos. 52-2 and 78-8.

requirement. For example, TS 2 (now TS 2.1) currently states: ███████████
████████████████████████████████████████████
Dkt. No. 78-8 at 2. That could be an acceptable trade secret disclosure, albeit one susceptible to proof that such "knowledge" is already in the public domain. However, the footnote to TS 2 (2.1) creates ambiguity about what the trade secret is because the footnote seems to say that AON is *not* merely claiming "knowledge." The footnote states in relevant part:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███ ███ ███ ███ ███ ███ ███ ███ ███
███████ ████ ██████ ████ ████ ████
███████████████████████████████████████████████
██████████████████████████████

*Id.* at 2 n.2 (emphasis added). This footnote contains more detail about the nature of the trade secret and what was disclosed to Seagate, suggesting that there is something more than "knowledge that" AON successfully used ███████████████████████████
████████████. Further, AON refers to a "confidential implementation" of its approach without clarifying whether the confidential implementation is part of the trade secret, and if so, whether that implementation is actually described (*e.g.*, ████████████████████
████████████████████████████████████████████
████████████) or is not described.

Because it remains unclear what AON contends its trade secrets are, the Court agrees with Seagate that AON has not complied with this part of the Court's prior order, and AON's disclosures here do not serve as an appropriate guide for discovery.

6

### 3. TS 11 – "Optimization"

With respect to TS 11,[4] the Court's prior order stated, "[b]ecause it is not clear whether AON claims a particular implementation, or 'optimization,' . . . it must . . . clarify its description of that trade secret." Dkt. No. 69 at 7.

Seagate argues that despite the Court's order directing AON to clarify its description of TS 11, AON made minimal changes to its disclosure and did not disclose any specific optimization. Dkt. No. 79 at 5, 18-19. AON responds that its trade secret now includes disclosure of how to ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Dkt. No. 87 at 15-16.

The Court understands AON's TS 11.1 as disclosing that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉; the reason why this happens; and the benefits of doing it. While TS 11.1 does not disclose a particular instance or example of such optimization, or specific details of how the optimization is accomplished, AON need not claim its trade secret at that level of granularity. Rather, it is acceptable for AON to disclose—and claim—the "knowledge that" ▉▉▉▉▉▉▉▉ causes certain things to happen, which result in the benefits identified. Seagate is free to contest, on the merits, whether that knowledge is already in the public domain.

AON has complied with the Court's prior order regarding TS 11.

### B. Whether AON Was Permitted to Add Trade Secrets to Its Disclosure

Seagate argues that AON should not be permitted to add over 50 new alleged trade secrets in its third amended trade secret disclosure without seeking and obtaining leave of Court, particularly given that AON's deadline for disclosing its alleged trade secrets was February 7, 2025. *See* Dkt. No. 79 at 6, 19-22. AON responds that the Court's May 27, 2025 order "expressly authorized" the addition of these new alleged trade secrets. *See* Dkt. No. 87 at 2-3, 5, 9-10. In any event, AON contends that all of the new alleged trade secrets are "encompassed within the 22 categories of trade secrets" identified in its earlier disclosure. *Id.* at 10-11.

---

[4] TS 11 corresponds to current alleged trade secret TS 11.1. *Compare* Dkt. Nos. 52-2 and 78-8.

AON is mistaken. The Court's May 27, 2025 cannot plausibly be read as generally permitting AON to freely add new alleged trade secrets to its disclosure. That order addressed Seagate's objections to a disclosure that included 22 alleged trade secrets. The Court ordered AON to amend seven of them and permitted it to amend the remainder. The concluding section of the order states:

> For the reasons explained above, the Court grants in part and denies in part Seagate's motion to compel. AON *must* amend its trade secret disclosure, consistent with the direction in this order, with respect to the following alleged trade secrets: TS 2, 3, 9, 11, 12, 16, and 17. AON *may* amend its other alleged trade secrets to address concerns raised by Seagate if it wishes. AON's amended trade secret disclosure must be served no later than June 6, 2025.
>
> Meanwhile, discovery shall proceed as to all trade secrets other than TS 2, 3, 9, 11, 12, 16, and 17. Discovery may proceed as to TS 2, 3, 9, 11, 12, 16, and 17 as soon as AON serves a disclosure that complies with the direction in this order.

Dkt. No. 69 at 9 (emphasis added). The last sentence of the order was followed by a footnote, stating: "The Court defers consideration of whether and under what circumstances AON may make additional amendments to its trade secret disclosure in the future." *Id.* at 9 n.4. There is simply no basis for AON's contention that this order "expressly authorized" adding new alleged trade secrets beyond the 22 already listed. It clearly did not.

To the extent AON contends that it has simply broken down each of its generally-described trade secrets into discrete, more particularized sub-trade secrets, that argument could support a request for leave to amend, had AON *replaced* each generally-described trade secret with more particularized sub-trade secrets, but it did not. Instead, AON continues to rely on its earlier, generally-described trade secrets, while *adding* new alleged trade secrets and insisting that each and every trade secret is "independent, self-contained, and severable." *See* Dkt. No. 78-8 at 2. In any event, as Seagate observes, many of AON's new alleged trade secrets cannot even be fairly described as "encompassed" by the 22 alleged trade secrets in AON's earlier disclosure. *See* Dkt. No. 87 at 10; Dkt. No. 91 at 3-4.

Finally, the fact that AON added so many new alleged trade secrets four months after the

February 7, 2025 deadline set by the presiding judge, without adequate justification, gives the Court pause. It is not clear why AON waited so long, why it did not make this disclosure earlier, or why it did not seek leave to amend.

For these reasons, the Court is not persuaded that the new alleged trade secrets should serve as a guide to discovery.

## IV.   CONCLUSION

The Court denies Seagate's motion to strike AON's disputed alleged trade secrets as a discovery sanction. However, the Court agrees that AON did not comply with the Court's May 27, 2025 order requiring amendments to clarify the scope of TS 2, 3, 9, 12, 16, and 17. AON must do so promptly, as its failure to do so may impact its ability to obtain corresponding discovery of Seagate's confidential information. AON did (belatedly) comply with the requirement to clarify the scope of TS 11.

As a matter of discovery management, the Court is not persuaded that AON should be permitted to expand the scope of discovery by virtue of its belated disclosure of new alleged trade secrets beyond those it previously disclosed. The Court does not address whether the new alleged trade secrets would otherwise comply with the "reasonable particularity" requirement.

**IT IS SO ORDERED.**

Dated: September 22, 2025

Virginia K. DeMarchi
United States Magistrate Judge