UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACCESS OPTICAL NETWORKS, INC., | Case No. 24-cv-03745-EKL |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| SEAGATE TECHNOLOGY LLC, | Re: Dkt. No. 121 |
| Defendant. | |

Plaintiff Access Optical Networks, Inc. ("AON") alleges that Defendant Seagate Technology LLC ("Seagate") misappropriated its trade secrets and breached the parties' non-disclosure agreements.  Seagate moves for summary judgment on the basis that AON's claims are time-barred.  Mot. for Summ. J., ECF No. 121 ("Motion").  The Court carefully reviewed the briefs and heard argument on November 19, 2025.  For the following reasons, the Motion is GRANTED and AON's claims are DISMISSED with prejudice.

I.      BACKGROUND

A.      Factual Background

"AON is a data storage company that develops optical data storage products and network access equipment."  Second Am. Compl. ¶ 11, ECF No. 39 ("Compl.").  AON has "dedicated over two decades, thousands of employee hours and millions of dollars in research and development to overcome the limitations of traditional data storage technology."  *Id*. ¶ 1.  AON has innovated in the field of Holographic Data Storage ("HDS"), "a revolutionary technology that uses precisely controlled laser beams to store high volumes of digital data in three-dimensional photo-refractive crystals."  *Id*.

Seagate is a technology company that has focused on developing "an alternative next-generation storage system based on Heat-Assisted Magnetic Recording ('HAMR') principles." *Id.* ¶ 2.  HAMR "uses a combination of magnetic field and light to record information at a high density in a recording medium."  *Id.*  Both HDS and HAMR technology "require sophisticated optical engineering capabilities in order to succeed."  *Id.* ¶ 3.

AON's relationship with Seagate began in 2012.  *Id.* ¶ 38.  At the time, Seagate "led AON to believe that it was interested in a potential collaboration or investment."  *Id.* ¶ 4.  To facilitate the partnership, the parties entered into a Master Non-Disclosure Agreement ("Master NDA") and two Supplemental Non-Disclosure Agreements ("Supplemental NDAs").  *Id.* ¶ 40.  The Master NDA provides general terms that apply to any disclosure of confidential information, and the Supplemental NDAs define the scope of specific confidential information that the parties agreed to exchange.

The Master NDA provides that the parties may use each other's confidential information solely "for the benefit of a potential business relationship between Seagate and [AON]."  Compl. Ex. D ¶ 5, ECF No. 39-4 ("Master NDA").  On July 23, 2012, the parties executed the First Supplemental NDA, which covered confidential information disclosed between July 23, 2012, and July 22, 2014.  Compl. Ex. E ¶ 1, ECF No. 39-5 ("First Supplemental NDA").  The First Supplemental NDA covered the following AON confidential information:  "Business and technical information related to Energy Assisted Magnetic Recording, recording heads, sliders, and optical methods & components, including but not limited to:  business & marketing plans, designs, lasers, specifications, processes, manufacturing plans, manufacturing tooling, product plans, research, test tools, test data, test processes, and materials."  *Id.* ¶ 2.  Confidential information disclosed pursuant to the First Supplemental NDA was subject to a confidentiality period of five years from the date of disclosure.  *Id.* ¶ 3.2.

On July 21, 2014, the parties executed the Second Supplemental NDA, which covered confidential information disclosed between July 23, 2014 and July 22, 2017.  Compl. Ex. F ¶ 1, ECF No. 39-6 ("Second Supplemental NDA").  The Second Supplemental NDA covered the following AON confidential information:  "Business and technical information related to

2

Holographic Recording systems, devices, recording media, light modulators, light detectors, light sources and light path control, including but not limited to:  business & marketing plans, financial information, designs, lasers, specifications, processes, manufacturing plans, manufacturing tooling, product plans, research, test tools, test data, test processes, and materials." *Id.* ¶ 2. Confidential information disclosed pursuant to the Second Supplemental NDA was also subject to a confidentiality period of five years from the date of disclosure. *Id.* ¶ 3.2.

AON claims that, between 2012 and 2015, at "Seagate's insistence and encouragement, AON provided extensive proprietary and confidential demonstrations as well as detailed explanations of HDS and its photonic and optical systems to Seagate." Compl. ¶ 5.  According to AON, Seagate was having difficulty mastering optical technology required to develop Seagate's HAMR data storage device.  "AON, using the experience and expertise it had acquired from years of optical data storage research and development, provided Seagate with valuable confidential and trade secret information that addressed these optical challenges and problems Seagate was experiencing." *Id.* "AON also shared with Seagate confidential and trade secret information regarding how optical properties of the light on the recording medium have an impact on both the reliability and speed of the read/write process." *Id.* ¶ 27.

Despite the parties' early collaboration, "Seagate abruptly and unexpectedly stopped communicating with AON and no business agreement was reached." *Id.* ¶ 6.  According to the complaint, in 2018, AON learned that Seagate had "released a limited amount of HAMR drives direct to enterprise customers for them to pilot." *Id.* ¶ 53.  "Based on AON's years of experience working with these technologies, as well as what it witnessed during visits to Seagate's facilities, AON suspected that Seagate could not have accelerated the development of its HAMR drives over the 2016-2018 time period without in fact misusing the confidential and trade secret information that AON had shared with Seagate between 2012-2015." *Id.*

Suspicious of potential trade secret misappropriation, AON "engaged outside counsel to write to Seagate in 2018, to have Seagate confirm that it was not using any AON confidential or trade secret information." *Id.* ¶ 54.  On December 5, 2018, AON's counsel wrote to Seagate: "Based on [AON's] review of public information concerning Seagate's HAMR product, we have

1    concerns that Seagate's HAMR product may use AON trade secret information."  Compl. Ex. A,

2    ECF No. 39-1.  On January 9, 2019, Seagate's counsel responded that it was "not aware of any use

3    of [AON's] information by Seagate for products, development or any other purpose."  Compl. Ex.

4    B, ECF No. 39-2.  On January 25, 2019, AON's counsel sent Seagate another letter elaborating on

5    the confidential information AON had shared with Seagate and again requested a response from

6    Seagate.  Compl. Ex. C, ECF No. 39-3.  Seagate "seemingly ignored" this letter.  Compl. ¶ 7.

7    AON also "made diligent efforts to obtain a copy of Seagate's HAMR drive . . . but it was unable

8    to do so as the drives were released direct to a limited number of targeted enterprise customers

9    only and not to the general public."  *Id.* ¶ 54.

10        On May 17, 2024, AON initiated this action in Santa Clara County Superior Court.  ECF

11    No. 1-1.  On August 2, 2024, after the case was removed to federal court, AON amended the

12    complaint.  AON asserts three causes of action:  (1) misappropriation of trade secrets under the

13    California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*); (2) misappropriation of

14    trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*); and (3) breach of

15    contract under California law.

16        **B.    Procedural History**

17        Earlier this year, the Court denied in relevant part Seagate's motion to dismiss AON's

18    claims as time barred.  *See* Order Granting Mot. to Dismiss in Part, ECF No. 38 ("MTD Order").

19    The Court concluded that it was not clear from the face of the complaint that AON's claims were

20    time-barred.  Rather, AON plausibly alleged that its claims were timely because they accrued in

21    2021, when certain Seagate patents and patent applications were published.  Compl. ¶¶ 55, 57-58,

22    61.  The complaint alleged that these Seagate patent applications for the first time disclosed

23    HAMR features that "bear a striking resemblance to two AON trade secrets shared with Seagate

24    under the NDA in 2013," and that the patent applications "reveal[ed]" to AON that Seagate

25    allegedly misappropriated its trade secrets.  *Id.* ¶¶ 57, 61.

26        The Court held that, based on the allegations in the complaint, AON's claims did not begin

27    to accrue in 2018, when it first developed suspicions of trade secret misappropriation.  Drawing

28    reasonable inferences in favor of AON, the Court held that AON plausibly alleged that it

United States District Court
Northern District of California

1   conducted a reasonable investigation in 2018, and that despite its efforts, AON could not discover

2   a factual basis for its claims at that time.  *See* MTD Order at 7.  Because AON plausibly alleged

3   that it conducted a reasonable investigation in 2018 and could not discover a factual basis for its

4   claims, the delayed discovery rule applied, and AON's claims did not accrue until 2021.

5           After the Court denied Seagate's motion to dismiss, information learned in discovery shed

6   further light on AON's suspicions of trade secret misappropriation and breach of contract in 2018.

7   *See* Joint Case Mgmt. Statement at 3-7, ECF No. 103.  The Court granted Seagate's request to file

8   a motion for summary judgment focused solely on whether AON's claims are barred by the

9   applicable statutes of limitations.  Min. Order, ECF No. 111.  This Order resolves that motion.

## II.    LEGAL STANDARD

11          A court may grant summary judgment on any issue, claim, or defense if there is "no

12  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

13  Fed. R. Civ. P. 56(a).  A fact is material if, under the governing substantive law, it could affect the

14  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is

15  genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

16  party."  *Id.*

17          The moving party bears the initial burden of demonstrating that there is no genuine dispute

18  of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may

19  satisfy this burden in different ways depending on whether it has the burden of proof at trial.  If

20  the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in

21  the record" to demonstrate that no reasonable trier of fact could find for the non-moving party.

22  Fed. R. Civ. P. 56(c)(1)(A).  By contrast, if the non-moving party bears the burden of proof at

23  trial, the moving party need only demonstrate that there is an absence of evidence to support the

24  non-moving party's case.  *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

25          Once the moving party has met its burden, the burden shifts to the non-moving party to

26  designate specific facts showing that there is a genuine dispute.  *Celotex*, 477 U.S. at 324.

27  To carry this burden, the non-moving party must "do more than simply show that there is some

28  metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

United States District Court
Northern District of California

1    475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [non-

2    movant's] position will be insufficient" to survive summary judgment.  *Anderson*, 477 U.S. at 252.

3    Instead, "there must be evidence on which the jury could reasonably find for the [non-moving

4    party]."  *Id.*

5            In determining whether there is a genuine dispute of material fact, the court must take "the

6    evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-

7    moving party."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  The court does

8    not "engage in credibility determinations or weigh evidence."  *Munden v. Stewart Tit. Guar. Co.*,

9    8 F.4th 1040, 1044 (9th Cir. 2021).  "The district court need not examine the entire file for

10   evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing

11   papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco

12   Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also* Fed. R. Civ. P. 56(c)(3).

13           At summary judgment, the focus is not "on the admissibility of the evidence's form," but

14   rather "on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.

15   2003).  "To survive summary judgment, a party does not necessarily have to produce evidence in a

16   form that would be admissible at trial, as long as the party satisfies the requirements of Federal

17   Rule of Civil Procedure 56."  *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001).

18   An affidavit or declaration "must be made on personal knowledge, set out facts that would be

19   admissible in evidence, and show that the affiant or declarant is competent to testify on the matters

20   stated."  Fed. R. Civ. P. 56(c)(4).

21   **III.    DISCUSSION**

22           Seagate argues that AON's claims are untimely as they accrued no later than 2018, when

23   AON developed a firm conviction that Seagate misappropriated its trade secrets and breached the

24   parties' non-disclosure agreements.  Based on the undisputed facts, the Court agrees that AON's

25   claims are untimely.  The Court also concludes that neither the delayed discovery rule nor the

26   doctrine of fraudulent concealment delayed or tolled the limitations periods.  Accordingly, there is

27   no genuine dispute of material fact that AON's claims are time-barred, and Seagate is entitled to

28   summary judgment.

United States District Court
Northern District of California

1

**A.    AON's Claims Accrued No Later Than December 5, 2018.**

2    AON's trade secret claims are subject to a three-year limitations period.  18 U.S.C.

3    § 1836(d) (providing three-year period for claims brought under the Defend Trade Secrets Act);

4    Cal. Civ. Code § 3426.6 (providing the same for claims brought under the California Uniform

5    Trade Secrets Act).  AON's breach of contract claim is subject to a four-year limitations period.

6    Cal. Civ. Proc. Code § 337(a).  These periods were suspended for 180 days, from April 6, 2020,

7    until October 1, 2020, due to the COVID-19 pandemic.  Cal. R. Ct. App. I Emergency Rule 9.

8    AON filed the original complaint in this action on May 17, 2024.  ECF No. 1-1.  Accordingly,

9    AON's trade secret misappropriation claims are time-barred if they accrued before November 18,

10    2020, and the breach of contract claim is time-barred if it accrued before November 19, 2019.

11    The undisputed facts demonstrate that AON's claims accrued no later than 2018, well

12    outside of the limitations period.[1]  On April 27, 2018, Glenn Gladney – AON's president and chief

13    executive officer – sent an email to AON's board of directors detailing his conviction that Seagate

14    had misappropriated AON's trade secrets.  Fact Nos. 1-3; *see also* Linderman Decl. Ex. B, ECF

15    No. 121-3 ("Gladney Email").  In the email, Gladney explains that he had recently heard from a

16    lens supplier that Seagate was "purchasing a lot of 'glass' which indicated the development of a

17    holographic data storage project."  Gladney Email at AON_00002850.  Gladney "immediately

18    searched the patent office application filings and located" a Seagate patent application that, to

19    Gladney, was "a clear indication of holographic data storage research and development."  *Id*.

20    More precisely, the application reflected "volumetric holography using 90 degree angle

21    multiplexing," which only AON was working to commercialize at the time.  *Id.*

22    After discovering this information, Gladney called Dave Aune, a former Seagate employee

23    who previously reported to Seagate's chief technical officer.  *Id.*  Aune had been one of the

24    "principal Seagate recipients" of the alleged trade secrets that AON had shared in meetings and

25    correspondence between July 2012 and May 2015.  Interrogatory Resp. at 8-9, ECF No. 151; *see*

26

27    ───────────────
[1] This Order relies exclusively on undisputed facts.  *See* Combined Separate Statement, ECF
No. 138.  Citations to "Fact No." reference the undisputed facts proffered by Seagate.  Although
28    the statement of facts includes excerpts of documents in the record, the Court has also reviewed
each cited document in its entirety.

United States District Court
Northern District of California

*also* Linderman Decl. Ex. I (summarizing Gladney's alleged disclosures of AON trade secrets to Aune).  During the call, Aune reportedly agreed with Gladney that the focus of Seagate's patent application "was a problem," and he encouraged Gladney to "contact Seagate and let them know that [it] is a problem."  Gladney Email at AON_00002850.

Based on his research into Seagate's patent application and his call with Seagate's former employee, Gladney developed a strong conviction that Seagate had crossed a legal boundary.  The following excerpts of the April 27, 2018 email reflect Gladney's convictions:

> I believe Seagate fraudulently misrepresented their interest to invest in AON and collaborate on the development to commercialize holographic data storage in meetings and negotiations during 2014.  Seagate requested proprietary information and trade secrets with the intent to defraud AON and has misappropriated [AON's] technologies.  If Seagate were to commercialize a product they would infringe our patents.  However, due to the fraud and other actions it is appropriate not to wait for Seagate to introduce a product before considering legal action.

> Seagate started negotiations in 2014 dangling the possibility of funding AON's holographic data storage product commercialization and providing co-development support such as image post processing.  Seagate continued to reduce the amount of funding and structure of the deal until their last offer which was $2 million dollars for the right to make and [sell] AON's holographic data storage with no future investments, royalties, and/or payments.  Of course, Seagate knew that was a totally unacceptable offer.  But, evidently, feeling they had pilfered us for enough information to proceed to develop our product themselves AON's rejection of their offer did not matter!

Gladney Email at AON_00002852; Fact No. 3.  Two days later, one of AON's board members reacted: "Clearly a breach of agreement."  Fact No. 4; Linderman Decl. Ex. C at AON_00003318.

Gladney's email set in motion AON's early attempts to stop Seagate's alleged misappropriation through legal action.  On April 30, 2018, Frank Miles – AON's chief financial officer – forwarded Gladney's email to contacts at Goldman Sachs, requesting their "help in identifying corporate legal counsel to work immediately and closely with AON."  Fact No. 5; Linderman Decl. Ex. D at AON_00003275.  Miles explained that Gladney and "several of [AON's] key [board] members/senior technical staff" had concluded that "Seagate technologically infringed on AON's IP trade secrets."  *Id.*  In further correspondence with Goldman Sachs on May 8, 2018, Gladney elaborated:

United States District Court
Northern District of California

> The Seagate patent not only infringes on the existing patent(s) owned and licensed by AON it also includes information communicated to Seagate during briefings, meetings, and materials provided as updates, such as the use of the lasers to change the phase, polarization, wavelength, intensity and other characteristics of the stored locations. . . . So, the point is there are some cases where the patents are clearly infringe[d] and other cases where information gained from AON during meetings and discussions have been included as well.

> AON is viewing this as a breach of agreement, fraud, and other violations in addition to patent infringement.  Our goals include, where possible, stopping the Seagate holographic data storage product development and patent applications prior to the completion of a commercial product.

Fact No. 6; Linderman Decl. Ex. F at AON_00003330.

On May 15, 2018, Gladney provided an update to AON's board of directors.  Gladney explained that the company was taking action in response to Seagate's attempt to commercialize a holographic data storage product, "which we believe will be shown to have breached [sic] an agreement with AON and utilized our Intellectual Property (IP), trade secrets, design(s), business plans, and customer information[.]"  Fact No. 8; Linderman Decl. Ex. F at AON_00003332.  Gladney explained that AON had engaged the law firm Ropes & Gray LLP "to prosecute this claim against Seagate."  *Id.*  Ultimately, on December 5, 2018, Ropes & Gray sent a letter to Seagate on behalf of AON expressing "concerns that Seagate's HAMR product may use AON trade secret information."  Fact No. 9; Linderman Ex. G.  Seagate denied this accusation, then ignored follow-up correspondence from Ropes & Gray sent on January 25, 2019.  Fact Nos. 10-12.  AON did not bring this action until May 17, 2024.  Fact No. 13; ECF No. 1-1.

Here, based on the undisputed facts summarized above, there is no triable issue that AON learned all the information it needed to pursue its claims by December 5, 2018, if not earlier.  *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) (in bank) ("A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her.").  The statute of limitations began to run once AON discovered Seagate's alleged misconduct, or when AON should have discovered such misconduct by the exercise of reasonable diligence.  *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 223 (2002); *see also Gabriel Techs. Corp. v. Qualcomm In*c., 857 F. Supp. 2d 997, 1010 (S.D. Cal. 2012) ("[A] breach of contract claim accrues when the plaintiff 'discovers or could have discovered, through

1  the exercise of reasonable diligence, all of the facts essential to his cause of action.'" (citation

2  omitted)).

3         By December 5, 2018, AON's chief executive officer and other members of the company's

4  senior leadership team held firm convictions – based on Gladney's investigation – that Seagate

5  breached the parties' non-disclosure agreements and misappropriated AON's trade secrets.

6  Gladney and several others at AON described the misappropriation and breach as "clear" based on

7  the evidence available to AON in 2018.  *See* Fact Nos. 4, 6.  Gladney was well-positioned to

8  determine whether Seagate's patent application revealed a factual basis for wrongdoing and injury

9  to AON.  Gladney was the "principal discloser of AON's trade secrets" to Seagate, and "a direct

10  participant in technical exchanges, site visits, and disclosures to Seagate."  Interrogatory Resp. at

11  8-9, 15.  Moreover, in 2018, AON had already ruled out the possibility that Seagate's rapid

12  product development was the result of Seagate's independent innovation.  As stated in its

13  interrogatory responses, AON saw no plausible innocent explanation for Seagate's conduct:

> In 2018, Seagate released pilot HAMR drives and made public statements that demonstrated the incorporation of sophisticated optical subsystems which, upon information and belief, could not have been developed without the use of AON's confidential information.  AON, through its own technical expertise and review of public information, determined that Seagate's progress was attributable to the misappropriation of AON's trade secrets.

18  Interrogatory Resp. at 14-15.  Therefore, unless another doctrine applies to delay accrual of

19  AON's claims, or to toll the statute of limitations, AON's claims are time-barred.[2]

20         **B.    The Limitations Periods Were Neither Delayed Nor Tolled.**

21         AON invokes the delayed discovery rule and the fraudulent concealment doctrine to render

22  its claims timely.  Neither doctrine saves AON's claims in this case.

23             **1.    The Delayed Discovery Rule**

24         Under the delayed discovery rule, "a cause of action accrues and the statute of limitations

25  begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless

26  the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed

27  _____

28  [2] Because AON had actual notice of its claims in 2018, the Court does not reach Seagate's
argument that AON had constructive notice based on other patent applications.  Mot. at 8-10.

United States District Court
Northern District of California

a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005). In *Fox*, the Supreme Court of California explained:

> Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.

*Id*. at 808-09. As the party invoking the delayed discovery rule, it is AON's burden to "show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)); *see also Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1218 (N.D. Cal. 2014).

Here, the undisputed facts preclude application of the delayed discovery rule. By December 5, 2018, AON had already conducted an investigation and developed the belief – based on then-available evidence – that it had claims against Seagate for trade secret misappropriation and breach of contract. AON decided to pursue those claims at that time, hired legal counsel, and confronted Seagate. AON argues that it could not definitively prove its claims because Seagate refused to provide a copy of its HAMR product. *See* Opp. at 6, ECF No. 133-2 ("AON attempted to conduct its own independent investigation but was unable to procure a HAMR before filing its complaint."). But a plaintiff may not delay in filing suit once it has discovered a factual basis for the claims, solely on the ground that *definitive proof* is not yet available. *Jolly*, 44 Cal. 3d at 1111 ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery."); *see also Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1103 (C.D. Cal. 2016) ("[T]he fact that [plaintiff's] 'independent investigation' purportedly produced no 'direct or circumstantial evidence proving' [defendant's] wrongdoing does not justify tolling of the relevant statutes of limitation."). In any event, AON has not produced any evidence suggesting that it needed to inspect Seagate's product to discover its claims. To the contrary,

1    Gladney opined in April 2018 that "it is appropriate not to wait for Seagate to introduce a product

2    before considering legal action."  Fact No. 3.

3                    **2.    The Fraudulent Concealment Doctrine**

4            The doctrine of fraudulent concealment is also inapposite based on the undisputed facts of

5    this case.  The doctrine delays or tolls the statute of limitations when a defendant engages in fraud

6    that prevents the plaintiff from discovering the factual basis of its potential claims.  *See, e.g.*, *El

7    Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040 (9th Cir. 2003) (holding that defendant's

8    "misrepresentations and forgery hindered [plaintiff's] discovery of the breach").  The plaintiff

9    bears the burden of showing that the defendant "actively misled" the plaintiff, and that the plaintiff

10   "had neither actual nor constructive knowledge of the facts constituting [its] cause of action

11   despite [its] due diligence."  *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996); *Weatherly v.*

12   *Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913, 919 (2004) ("[A] defendant cannot hinder

13   the plaintiff's discovery through misrepresentations and then fault the plaintiff for failing to

14   investigate.").  The undisputed facts demonstrate that neither element is met.

15           First, the fraudulent concealment doctrine does not apply because AON had actual

16   knowledge of the factual basis for its misappropriation and breach of contract claims by the time it

17   confronted Seagate on December 5, 2018.  By this time, AON had evidence from at least four

18   sources – Gladney's own knowledge, statements from a lens supplier, Seagate's patent

19   application, and a former Seagate employee – that specific misconduct had occurred, and that

20   Seagate was responsible.  Armed with sufficient evidence to bring its claims, AON needed to

21   "decide whether to file suit or sit on [its] rights."  *Jolly*, 44 Cal. 3d at 1111; *see also Noland v.*

22   *Chua*, 816 F. App'x 202, 203-04 (9th Cir. 2020) ("Because [plaintiff] had sufficient knowledge to

23   file his RICO claims *before* learning of the allegedly concealed facts, he cannot establish"

24   fraudulent concealment.); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1110

25   (N.D. Cal. 2012) (holding that where plaintiff has "actual knowledge of purported misconduct (or

26   at least knowledge sufficient for Rule 11's pleading requirements), the doctrine of fraudulent

27   concealment is inapplicable").

28

United States District Court
Northern District of California

1    Second, there is no evidence that Seagate actively misled AON. Seagate's mere denial of

2    wrongdoing in its January 9, 2019 letter is insufficient. *Grimmett*, 75 F.3d at 515 ("A failure to

3    'own up' does not constitute active concealment."). At the motion hearing, AON emphasized that

4    Seagate affirmatively represented that "Seagate's HAMR technology is based on decades of

5    research and the significant amount of independent IP and knowledge [Seagate has] developed in

6    HAMR." Linderman Decl. Ex. H. However, even if this statement is distinguishable from a mere

7    denial of wrongdoing, there is no evidence that Seagate's assertion misled AON. *Grimmett*, 75

8    F.3d at 514 (holding that plaintiff has the burden to demonstrate that defendant "actively misled"

9    plaintiff). When AON confronted Seagate in December 2018 and January 2019, AON had already

10   concluded that Seagate's product "could not have been developed without the use of AON's

11   confidential information." Interrogatory Resp. at 14-15; *see also* Compl. ¶ 53. AON has not

12   produced any evidence that Seagate's denials caused AON to doubt the factual basis that it had

13   already discovered for its claims. To the contrary, after Seagate's denial, AON continued to assert

14   that Seagate misappropriated AON's trade secrets. Linderman Decl. Ex. I; *cf. Bergstein v. Stroock*

15   *& Stroock & Lavan LLP*, 236 Cal. App. 4th 793, 820 (2015) ("[A]s shown by plaintiffs' . . . letter

16   responding to [defendant's] denial it received confidential information, plaintiffs did not believe

17   these denials, and cannot rely on them now to create an estoppel.").[3]

18   In sum, AON's claims accrued no later than December 5, 2018. The limitations periods

19   were neither delayed nor tolled. Therefore, AON's claims are time-barred, and Seagate is entitled

20   to judgment as a matter of law.[4]

21

---

22   [3] At the hearing, AON cited additional authority for its fraudulent concealment argument. Both
     cases are inapposite because the fraudulent concealment doctrine was applied at the pleading
23   stage, where facts are construed in the light most favorable to the plaintiff. *RA Med. Sys. Inc. v.*
     *PhotoMedex, Inc.*, 373 F. App'x 784, 786-87 (9th Cir. 2010); *Low v. SDI Vendome S.A.*, No. CV
24   02-5983 AHM (CWx), 2003 WL 25678880, at *6 (C.D. Cal. Jan. 7, 2003) ("[T]he reasonableness
     of Plaintiff's reliance and the reasonable diligence of his inquiry are questions of fact not
25   susceptible to resolution on a motion to dismiss."). Here, at summary judgment, it is AON's
     burden to produce some evidence of fraudulent concealment, and it has not done so.
26
     [4] AON also argues that the MTD Order dooms Seagate's motion. But at the pleading stage, the
27   Court considered only the facts alleged in the complaint. Dismissal was not appropriate because
     the expiration of the limitations periods was not "apparent from the face of the complaint." *In re*
28   *Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1035 (N.D. Cal. 2009); *see*
     *also Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (per curiam).

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.    Seagate's Counterclaims are Dismissed as Moot.

In its answer, Seagate asserted counterclaims for declaratory judgment of inventorship of U.S. Patent Nos. 11,380,354; 11,328,745; and 11,011,203.  *See* Answer at 48-56, ECF No. 44. Seagate alleged that, "[b]y clearly challenging the inventorship of Seagate's patents in its [complaint], therefore, AON created an actual, justiciable controversy concerning the inventorship of the patents." *Id*. at 51, 53-54, 56.  Prior to the motion hearing, the Court ordered the parties to meet and confer regarding whether Seagate's counterclaims would be rendered moot if the Court grants Seagate's motion for summary judgment.[5]  At the hearing, the parties agreed that Seagate's counterclaims should be dismissed as moot if the Court grants Seagate's motion and dismisses AON's claims.  The parties then filed a joint stipulation to this effect, providing that "Seagate's counterclaims are moot if the Court grants Seagate's" motion for summary judgment.  Stip. at 1, ECF No. 155; *id*. (requesting that the Court "dismiss Seagate's counterclaims as moot").  The Court agrees that Seagate's counterclaims are moot due to the dismissal of AON's claims with prejudice, which extinguishes any actual controversy between the parties.  Accordingly, Seagate's counterclaims are DISMISSED, without leave to amend, as moot.

## IV.    CONCLUSION

For the foregoing reasons, Seagate's motion for summary judgment is GRANTED.  All claims asserted by AON are DISMISSED with prejudice.  Pursuant to the parties' stipulation, Seagate's counterclaims are DISMISSED.

**IT IS SO ORDERED.**

Dated: November 21, 2025

_____
Eumi K. Lee
United States District Judge

---

[5] "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."  *California v. Texas*, 593 U.S. 659, 672 (2021).  A justiciable case or controversy exists for purpose of declaratory relief if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  A case becomes "moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (citation omitted).

14